NATIONAL CASUALTY COMPANY,
Appellant

v.

John KINNEY, Alex Ostopick, Joseph Price, Stephen Beck, Tobyhanna Army Depot and United States of America, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 30, 2013.

Filed April 25, 2014.

Robert J. Grimm, Pittsburgh, for appellant.

David S. Smacchi, Kingston, for appellees.

BEFORE: GANTMAN, J., SHOGAN, J., and PLATT, J.*

OPINION BY GANTMAN, J.:

Appellant, National Casualty Company ("NCC"), appeals from the order entered in the Monroe County Court of Common Pleas, denying its motion for summary judgment in this declaratory judgment action. We affirm.

The relevant facts and procedural history of this case are as follows. John Kinney ("Kinney"), Alex Ostopick ("Ostopick"), Joseph Price ("Price"), and Stephen Beck ("Beck") (collectively "the MTP Appellees")[1] were employees of Tobyhanna Army Depot ("Tobyhanna"), who participated in a vanpool Mass Transportation Program ("MTP") sponsored by the United States Department of Transportation. Tobyhanna provides vouchers, issued from the Department of Transportation, to employees who voluntarily participate in the MTP to defray the cost of renting or leasing a van.

Specifically, Tobyhanna employees who participate in the MTP select a van or van company of their choosing and submit an application to the Tobyhanna Management Assistant for approval. Van companies seeking to participate in the program must also obtain approval from Tobyhanna.[2] Once approved, the Management Assistant orders vouchers from the Department of Transportation, and distributes the vouchers to the employees to use towards payment for renting or leasing the van. Employees who do not participate in the MTP for more than 50 percent of the month must repay Tobyhanna for the vouchers already received. All full-time employees participating in the program receive vouchers of the same value regardless of how far they travel to work. Likewise, all part-time employees participating in the program receive vouchers of the same value regardless of how far they travel to work. Tobyhanna does not require its employees to participate in the MTP, and

---

* Retired Senior Judge assigned to the Superior Court.

1. Mike McClernon ("McClernon") was initially a party to this action. On April 9, 2012, the parties stipulated to remove McClernon from the caption following his death. We will refer to him individually as necessary.

2. Tobyhanna approved all van companies who sought to participate in the program.

employees can opt-out of the program at any time. Participating employees deal directly with van companies and can maximize their voucher amount by carefully selecting van companies based on price. The vouchers constitute fringe benefits, which do not come out of participating employees' salaries.

On November 1, 2009, Beck leased a van from Trygar Transportation, Inc. ("Trygar") for transportation to and from Tobyhanna. The MTP Appellees and McClernon used vouchers provided by Tobyhanna as part of the MTP to lease the vehicle. Trygar maintained an automobile liability insurance policy with NCC. The lease states that Trygar's insurance policy provides coverage to van drivers, except drivers under 25 years old or drivers with motor vehicle violations within the past three years. After leasing the van, the MTP Appellees and McClernon met daily at a nearby parking lot to drive to and from work together. The MTP Appellees and McClernon took turns driving throughout the month.

On December 16, 2009, Beck was operating the leased van with the other MTP Appellees and McClernon as passengers, traveling from the designated parking lot meeting place to Tobyhanna. That morning, they were involved in a motor vehicle accident in which Kinney and McClernon were injured. Kinney and his wife subsequently filed a complaint sounding in negligence in the Luzerne County Court of Common Pleas against Beck and Trygar for injuries Kinney sustained in the accident.

On October 27, 2010, NCC, Trygar's insurance company, filed a declaratory judgment action in the Monroe County Court of Common Pleas naming the MTP Appellees, McClernon, Tobyhanna, and the United States of America as defendants. NCC's complaint asked the court to declare the MTP Appellees and McClernon were in the course and scope of their employment at the time of the motor vehicle accident, such that the Pennsylvania Workers' Compensation Act at 77 P.S. § 1, et seq. ("WCA") was the sole remedy available to Kinney. NCC further sought the court to declare that it has no coverage obligations relative to any injuries or damages sustained by the MTP Appellees or McClernon arising out of the December 16, 2009 motor vehicle accident.

On January 18, 2013, NCC filed a motion requesting the court to enter summary judgment, declaring that the MTP Appellees and McClernon were acting in the course and scope of their employment at the time of the motor vehicle accident; Kinney's right to seek recovery for injuries arising from the motor vehicle accident is limited to recovery under the WCA; and NCC has no legal obligations relative to any injuries or damages sustained by the MTP Appellees or McClernon arising from the motor vehicle accident. Kinney filed a response in opposition on January 31, 2013. On March 21, 2013, the trial court denied NCC's motion for summary judgment. NCC timely filed a notice of appeal on April 18, 2013. The next day, the court ordered NCC to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and NCC timely complied. On May 13, 2013, this Court issued an order directing NCC to show cause why this Court should not dismiss the appeal as interlocutory. NCC responded on May 22, 2013. On May 28, 2013, this Court discharged the rule to show cause, permitting the appeal to proceed and advising the parties to address the issue in their briefs. NCC complied with this Court's directive, and we discuss our jurisdiction over the order in question as the first issue on appeal.[3]

NCC raises three issues for our review:

---

**3.** For purposes of disposition, we have reordered NCC's issues.

WHETHER THE INSTANT APPEAL SHOULD BE REVIEWED ON THE MERITS BY THIS HONORABLE COURT, AS THE TRIAL COURT'S DENIAL OF [NCC'S] MOTION FOR SUMMARY JUDGMENT EFFECTIVELY DISPOSED OF, AS A MATTER OF LAW, ALL CLAIMS AS AGAINST ALL PARTIES IN THE DECLARATORY JUDGMENT ACTION?

DID THE TRIAL COURT ERR IN RULING THAT APPELLEE, MR. JOHN KINNEY, AND THE OTHER APPELLEE EMPLOYEES, SHOULD NOT BE RESTRICTED TO OBTAINING RELIEF UNDER THE WORKERS' COMPENSATION ACT, BY CONCLUDING THAT THE "EMPLOYMENT CONTRACT" EXCEPTION TO THE "COMING AND GOING" RULE DID NOT APPLY DUE TO A LACK OF **SIGNIFICANT** EMPLOYER CONTROL OVER THE COMMUTING PROGRAM, WHERE SUCH A HEIGHTENED STANDARD IS NOT CONTEMPLATED BY THE LAW?

DID THE TRIAL COURT ERR IN RULING THAT THE RIDE SHARING ACT PRECLUDES THE OPERATION OF THE WORKERS' COMPENSATION ACT, WHERE THE RIDE SHARING ACT EXPLICITLY STATES THAT THE WORKERS' COMPENSATION ACT SHALL APPLY WHEN THE MOTOR VEHICLE USED IN A RIDE SHARING ARRANGEMENT IS OWNED OR LEASED BY AN EMPLOYER?

(NCC's Brief at 4) (emphasis in original).

[1–6] Initially we observe:

"Our scope of review of an order granting summary judgment is plenary." *Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership*, 764 A.2d 1100, 1103 (Pa.Super.2000), *appeal denied*, 566 Pa. 664, 782 A.2d 546 (2001). "[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact." *Id.* "We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." *Caro v. Glah*, 867 A.2d 531, 533 (Pa.Super.2004) (citing *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002)).

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [his] cause of action. *Grandelli v. Methodist Hosp.*, 777 A.2d 1138, 1145 n. 7 (Pa.Super.2001). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa. R.C.P. 1035.2. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. *Grandelli*, *supra* at 1143 (citing Pa. R.C.P. 1035.2 Note). "Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach

our own conclusions." *Grandelli, supra* at 1144. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion. *Caro, supra.*

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted). "Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden." *Paden v. Baker Concrete Constr., Inc.*, 540 Pa. 409, [412,] 658 A.2d 341, 343 (1995) (citation omitted).

> [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if ... charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused. *Id.* (internal quotations and citations omitted).

*Bartlett v. Bradford Publishing, Inc.*, 885 A.2d 562, 566 (Pa.Super.2005).

*Lineberger v. Wyeth*, 894 A.2d 141, 145–46 (Pa.Super.2006).

■ Further:

Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

Additionally,

> [we] will review the decision of the [trial] court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*Erie Ins. Exchange v. Muff*, 851 A.2d 919, 925 (Pa.Super.2004) (internal citations omitted).

In its first issue, NCC argues the trial court's denial of its motion for summary judgment effectively disposed of all of the claims set forth in its declaratory judgment complaint. NCC asserts it expressly petitioned the court to declare whether Kinney's right to seek recovery for personal injuries and damages sustained in the motor vehicle accident should be limited to a claim under the WCA. NCC maintains the court specifically decided that issue as a matter of law against NCC when it denied NCC's motion for summary judgment. NCC contends the denial of summary judgment ended the declaratory judgment litigation, leaving no questions of law or disputed issues of material fact for resolution. NCC concludes the instant appeal is not interlocutory, and this Court can address the merits of NCC's claims. We agree.

■ As a general rule, this Court may hear appeals only from final orders. Pa. R.A.P. 341(a). Rule 341(b) states:

**Rule 341. Final Orders; Generally**

**(b) Definition of Final Order.** A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) any order that is expressly defined as a final order by statute; or

(3) any order entered as a final order pursuant to subdivision (c) of this rule.

Pa.R.A.P. 341(b). Thus, an order is final and appealable if it disposes of all claims and all parties, is explicitly defined as a final order by statute, or is certified as a final order by the trial court or other reviewing body. *Id. See also Nationwide Mut. Ins. Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000); *General Acc. Ins. Co. of America v. Allen,* 547 Pa. 693, 692 A.2d 1089 (1997).

 The Declaratory Judgments Act provides:

**§ 7532. General scope of declaratory remedy**

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. **The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.**

42 Pa.C.S.A. § 7532 (emphasis added). Pursuant to this statute, "any order in a declaratory judgment action that either affirmatively or negatively declares rights, status, and other legal relations [is] a final order." *Wickett, supra* at 602, 763 A.2d at 817 (internal quotation marks omitted). The language of Section 7532, "given its plain meaning, does not impose any specific requirements on courts seeking to enter declaratory judgment orders. Rather, it

affords the courts broad discretion in crafting declaratory judgment orders by permitting such orders to be either affirmative or negative in form and effect." *Id.* at 604, 763 A.2d at 818. Consequently, a trial court order is final and immediately appealable pursuant to Pa.R.A.P. 341(b)(2), when the court enters a declaratory judgment order either affirmatively or negatively declaring the rights and duties of the parties, effectively disposing of the claims presented, even if the order does not expressly dispose of all claims or specify that the claims were declaratory in nature. *See id. See also Allen, supra* (holding trial court's determination of insurer's duty to defend was final and appealable under Pa.R.A.P. 341(b)(2) and Section 7532 as well as Rule 341(b)(1), even though trial court did not expressly determine insurer's duty to indemnify, where order was final determination as to legal rights and obligations of parties arising out of insurance policy, and effectively disposed of all claims presented in declaratory judgment action). Conversely, if the court makes no such declaration, the order is interlocutory. *Wickett, supra* at 602, 763 A.2d at 817.

Instantly, in its complaint for declaratory judgment, NCC asked the trial court to declare its rights and responsibilities under Trygar's insurance policy. NCC specifically requested the court to declare that the MTP Appellees and McClernon were within the course and scope of their employment at the time of the motor vehicle accident, so the WCA was the exclusive remedy for injuries and damages sustained as a result of the motor vehicle accident. NCC further asked the court to declare that it had no obligation to provide coverage, defense or indemnification to any of the MTP Appellees or McClernon. Likewise, in its motion for summary judgment, NCC asked the court to enter a judgment declaring that: (1) the MTP Appellees and

McClernon were acting in the course and scope of their employment at the time of the motor vehicle accident; (2) recovery for personal injuries and damages sustained as a result of the motor vehicle accident is strictly limited to recourse from the WCA; and (3) NCC has no legal obligations relative to any of the MTP Appellees or McClernon for injuries or damages arising from the motor vehicle accident.

■ By denying NCC's motion for summary judgment, the court effectively ruled NCC has a legal obligation to Trygar, where the MTP Appellees and McClernon were not acting within the course and scope of their employment at the time of the motor vehicle accident. The court's order denying summary judgment effectively resolved all issues presented in NCC's declaratory judgment action. *See* Pa.R.A.P. 341(b)(1). Thus, the decision concerning NCC's legal obligation constituted a final order under the Declaratory Judgments Act. *See* Pa.R.A.P. 341(b)(2); *Wickett, supra; Allen, supra.* Therefore, the court's order was immediately appealable.

For purposes of disposition, we combine NCC's remaining issues. NCC admits that, as a general rule, employees are not in the course and scope of their employment during their commute to and from work. NCC argues, however, the "employment contract exception" applies under the facts of this case because Tobyhanna controlled the means of the MTP Appellees' transportation to and from work and provided for the costs and expenses related to their commute. NCC maintains Tobyhanna controlled the means of transportation by determining initial eligibility into the MTP and dictating ongoing requirements for participation in the program. NCC claims the court improperly required NCC to show Tobyhanna exercised "significant" control over the means of transportation, where the law does not require that heightened standard. NCC contends Tobyhanna also provided for the costs and expenses relating to the employees' commute through the issuance of vouchers subsidizing rental fees for the vans. NCC avers Tobyhanna's control over the means of transportation, and payment of costs and expenses related to transportation, establishes the MTP Appellees had an implied employment contract with Tobyhanna that included transportation to and from work. NCC contends the MTP Appellees and McClernon were in the course and scope of their employment at the time of the motor vehicle accident by virtue of the "employment contract exception" to the general "coming and going rule." As a result, any recovery for the MTP Appellees and McClernon lies exclusively under the WCA.

NCC also argues the Ridesharing Act, at 55 P.S. § 695.1, *et seq.,* does not preclude Kinney's recovery under the WCA. NCC emphasizes Tobyhanna effectively leased the van at issue because it provided the vouchers used to pay for the van and administered participation in the MTP. NCC highlights language in the Ridesharing Act, stating the WCA shall apply to the driver of a company owned or leased vehicle used in a ridesharing arrangement. NCC concludes Kinney's exclusive means of recovery is under the WCA, and this Court should reverse the order denying NCC's motion for summary judgment. We disagree.

■ The WCA expressly provides recovery to employees injured in the course and scope of their employment. 77 P.S. § 431; *Wachs v. W.C.A.B. (American Office Systems),* 584 Pa. 478, 483, 884 A.2d 858, 861 (2005). An employee acts in the course and scope of his employment while engaged in the "furtherance of the busi-

ness or affairs of the employer, whether upon the employer's premises or elsewhere." *Peer v. W.C.A.B. (B & W Const.)*, 94 Pa.Cmwlth. 540, 503 A.2d 1096, 1097 (1986). Whether an employee is acting within the course and scope of his employment "is a question of law to be determined on the basis of the findings of fact." *SEPTA v. W.C.A.B (Scott)*, 136 Pa. Cmwlth. 98, 582 A.2d 421, 422 (1990), *appeal denied*, 527 Pa. 658, 593 A.2d 428 (1991).

▮▮▮ Generally, injuries sustained while an employee is commuting to or from his workplace are not compensable under the WCA. *Id.* This "coming and going" rule is grounded in the notion that employees are not usually engaged in the furtherance of the business or affairs of their employer while commuting to or from their place of employment. *Peer, supra* at 1098. "[O]ur courts have recognized exceptions to the rule in circumstances where an employee's use of a vehicle, although not directly related to his ... official duties and not located on the employer's premises, is nevertheless in furtherance of his ... employment." *Schiavone v. Aveta*, 41 A.3d 861, 867 (Pa.Super.2012), *appeal granted*, — Pa. ——, 77 A.3d 634 (2013).[4] These exceptions apply where: (1) the employment contract includes transportation to and from work; (2) the employee has no fixed place of work; (3) the employee is on special assignment for the employer; or (4) special circumstances are such that the employee was furthering the business of the employer. *Leisure Line v. W.C.A.B. (Walker)*, 986 A.2d 901, 906 (Pa.Cmwlth.

2009), *appeal denied*, 608 Pa. 650, 12 A.3d 372 (2010).[5]

▮▮▮ Regarding the first exception to the "coming and going rule," known as the "employment contract" exception, a reviewing court must consider the totality of the circumstances to determine whether an employee's contract provides for transportation to and from work. *Wachs, supra* at 485, 884 A.2d at 862. A contractual provision providing for an employee's transportation can be express or implied. *Sylvester v. Peruso*, 286 Pa.Super. 225, 428 A.2d 653, 655 (1981). "In such cases, the transportation is part of the consideration for the employee's services and it is usually deemed to be offered because it inures to the benefit of the employer, *e.g.*, it serves as an inducement for the employee to accept the position with the employer, ... or it insures that the employees arrive at work promptly when public transportation is not available[.]" *Williams v. W.C.A.B. (Matco Elec. Co., Inc.)*, 721 A.2d 1140, 1144 n. 9 (Pa.Cmwlth.1998) (*en banc*), *appeal denied*, 559 Pa. 685, 739 A.2d 547 (1999).

▮▮▮ Thus, the employment contract exception applies where: (1) the employee was commuting to or from work; (2) the employer controlled the means of transportation; **and** (3) the employer or company provided for the costs and expenses related to the commute. *Schiavone, supra* at 867 (holding facts of record established employment contract exception to coming and going rule where employee was involved in accident during commute home from work in vehicle owned and insured by employer, employer paid for all costs of operating vehicle including repairs and

4. On October 10, 2013, our Supreme Court granted allowance of appeal in *Schiavone* to determine jurisdictional issues unrelated to the viability of exceptions to the coming and going rule. *See id.*

5. The parties agree only the first exception is potentially applicable under these facts.

fuel, and employee stated that one of purposes of vehicle was to benefit employer by providing employee with transportation to work and to allow him to travel to job sites which were between his office and his home). Further, for the employment contract exception to apply, the costs and expenses provided by the employer must directly relate to the actual expense and time involved in the commute. *Leisure Line, supra* at 907. In other words, "where travel allowances are not directly related to the expense or distance of the employee's commute, and where the employer does not provide or control the means of transportation used, the contract cannot be deemed to include transportation to and from work." *Williams, supra* at 1144. *See also Leisure Line, supra* (holding employer's issuance of flat *per diem* payment for travel related expenses was insufficient to satisfy employment contract exception to coming and going rule).

Additionally, the Ridesharing Act provides, in pertinent provisions, as follows:

### § 695.1. Ridesharing arrangement defined

As used in this act, "ridesharing arrangement" shall mean any one of the following forms of transportation:

(1) The transportation of not more than 15 passengers where such transportation is incidental to another purpose of the driver who is not engaged in transportation as a business. The term shall include ridesharing arrangements commonly known as carpools and vanpools, used in the transportation of employees to or from their place of employment.

55 P.S. § 695.1(1).

### § 695.3. Workmen's compensation act not applicable to ridesharing

The [WCA] **shall not apply to a passenger injured while participating in a ridesharing arrangement between** such passenger's place of residence and place of employment. [The WCA] shall apply to the driver of a company owned or leased vehicle used in a ridesharing arrangement.

55 P.S. § 695.3 (emphasis added).

### § 695.4. Liability of employer

(a) An employer shall not be liable for injuries to passengers and other persons resulting from the operation or use of a motor vehicle, not owned, leased or contracted for by the employer, in a ridesharing arrangement.

(b) An employer shall not be liable for injuries to passengers and other persons because he provides information, incentives or otherwise encourages his employees to participate in ridesharing arrangements.

55 P.S. § 695.4.

█ The Ridesharing Act operates to prevent employees participating in a ridesharing arrangement from receiving workers' compensation benefits for injuries sustained when they are merely commuting to and from work. *Bensing v. W.C.A.B.*, 830 A.2d 1075, 1080 (Pa.Cmwlth.2003). *Compare Empire Kosher Poultry, Inc. v. W.C.A.B. (Zafran)*, 154 Pa.Cmwlth. 276, 623 A.2d 887 (1993), *appeal denied*, 536 Pa. 648, 639 A.2d 34 (1994) (holding Ridesharing Act did not apply where employee only sporadically and without notice provided fellow employee transportation home from work).

Instantly, the trial court denied NCC's motion for summary judgment, reasoning:

The first element [of the employment contract exception] is not in dispute, as the [MTP Appellees and McClernon] clearly were commuting to their job at Tobyhanna.

The relevant facts about the Tobyhanna carpool program, viewed in a light most

favorable to the non-moving parties, are as follows: the [MTP Appellees and McClernon] were involved in a program administered by the federal government, and offered at Tobyhanna, whereby employees received carpooling vouchers to help defray the costs of commuting. Tobyhanna required that employees sign up and use qualified carpooling transportation more than fifty percent of the days in a given work month to qualify for funds. The vendors who wished to provide vans or carpools for employees taking part in the carpool program were also required to obtain approval from Tobyhanna. Of the vendors who applied, all were granted eligibility to participate in the government program. The program also made no stipulations as to how the vehicles were to be used, other than that the vouchers were to be used only for commuting expenses. Approved employees were given vouchers to pay the van or car rental company, and were free to choose amongst any of the several approved vendors. It appears that the voucher amount was based upon the employee's status (full-time, part-time, etc.) and that the vouchers were fringe benefits, and did not come from employees' salaries.

\*　　\*　　\*

[F]or the employment contract exception to apply, the employer must exercise significant control over the program. Here, Tobyhanna exercised very little control. Tobyhanna allowed all interested vendors to participate in the program. Tobyhanna did not mandate that employees choose any specific vendor, and instead left the choice of vendors to the employees. The oversight of compliance with the program's requirements was minimal. Most importantly, Tobyhanna paid a flat rate to all employees, regardless of the length of the commute. The value of the voucher was based upon the employment status of the requesting employees. This is not enough to establish employer control. See [Williams, supra] . . . .

As Tobyhanna did not sufficiently control the means of transportation, and the travel allowances were not related to the distance traveled or the expense of travel, the employment contract exception to the coming and going rule does not apply.

Even if it did, summary judgment would still be denied as this case falls squarely within the bounds of the Ride Sharing Act.

\*　　\*　　\*

The car pooling agreement between [MTP Appellees and McClernon] clearly falls under the first definition of "ride sharing arrangement." [Appellee] Kinney was a passenger in the van, where transportation was incidental to another purpose of the driver (Mr. Beck), who was not engaged in transportation as a business. The Ride Sharing Act specifically states that where it is applicable, the [WCA] will not apply to injured passengers . . . .

The car pooling arrangement made by the individual [MTP Appellees and McClernon] is the type contemplated by the Ride Sharing Act. Accordingly, the [WCA] is not applicable, and the employer (Tobyhanna) is not liable for the injuries resulting from the collision on December 16, 2009.

The "coming and going" exception to the [WCA] does not support [NCC's] claim and the Ride Sharing Act prohibits it. Accordingly, [NCC's] motion for summary judgment will be denied.

(Opinion in Support of Order Denying Summary Judgment, filed March 21, 2013, at 4–7) (some internal citations omitted).

We agree. The record makes clear Tobyhanna employees participating in the MTP select a van or van company of their choosing; participating employees deal directly with van companies to maximize the value of their vouchers; Tobyhanna does not require employees to participate in the MTP; and participating employees can opt-out at any time. Additionally, Tobyhanna does not own, lease, insure, repair, or fuel the selected vehicles. As well, Tobyhanna's oversight with respect to compliance with the MTP is minimal. More importantly, the value of the government-funded vouchers is not tied directly to the distance travelled by participating employees during their commutes, but is a fixed amount based on employment status (full-time or part-time). *See Williams, supra; Leisure Line, supra.* Further, NCC presented no evidence suggesting that Tobyhanna benefitted from the MTP or that Tobyhanna administered the MTP to induce employees to work for the company. *See Williams, supra.* Thus, the record supports the trial court's determination that Tobyhanna neither controlled the means of the MTP Appellees' transportation nor provided for the costs and expenses directly related to their commute necessary to satisfy the employment contract exception to the coming and going rule. *See Schiavone, supra; Williams, supra; Leisure Line, supra.*[6]

Moreover, the Ridesharing Act addresses the type of vanpooling arrangement in which the MTP Appellees and McClernon participated, and expressly provides that the WCA does not apply to Kinney, where he was a passenger injured while partici-

pating in a vanpooling arrangement on his way to work. *See* 55 P.S. §§ 695.1(1); 695.3. Additionally, because Tobyhanna did not own, lease, or contract for the van involved in the motor vehicle accident; and merely provided information concerning participation in the MTP, the WCA is inapplicable. *See* 55 P.S. § 695.4. Therefore, we see no reason to disrupt the court's decision denying NCC's motion for summary judgment. *See Lineberger, supra.* Accordingly, we affirm.

Order affirmed.

---

**6.** With respect to NCC's complaint that the court improperly required it to show Tobyhanna exercised significant control over the MTP by stating, "for the employment contract exception to apply, the employer must exercise **significant** control ..." (*see* Trial Court Opinion at 5), it is clear from the court's

analysis when read in its entirety, that the court used "significant" as synonymous with "requisite" or "necessary" and did not subject NCC to a heightened standard inconsistent with the law. Thus, we give this particular claim no further attention.