J-A19028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANNA M. CARRASQUILLO, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF RAFAEL SANTIAGO, DECEASED | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| NANCY KELLY AND NATIONWIDE MUTUAL FIRE INSURANCE COMPANY | : : : : : | No. 2720 EDA 2018 |
| APPEAL OF: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY | : : : | |

Appeal from the Order Entered, August 8, 2018,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s):  October Term, 2017, No. 563.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:          **FILED NOVEMBER 12, 2019**

In this declaratory judgment action, Anna Carrasquillo asked the trial court to declare that Nationwide Mutual Fire Insurance Company had a duty to defend and indemnify its insured, Nancy Kelly, in a separate lawsuit involving the death of Carrasquillo's son.  The trial court denied Nationwide's motion for summary judgment in the declaratory judgment action. Nationwide appealed from that order.  Upon careful review, based upon the language of the policy at issue, we reverse.

On October 5, 2014, Rafael Santiago was staying at the home of Nancy Kelly, located in Philadelphia, Pennsylvania.  James Kelly, who resided with

_____
*   Former Justice specially assigned to the Superior Court.

Nancy Kelly, was also present.[1]  That night, James Kelly fatally shot Santiago inside the Philadelphia home.  When the shooting occurred, James and Nancy Kelly were insured under a homeowners' insurance policy with Nationwide.[2]

On May 23, 2016, James Kelly pleaded guilty to the charge of murder in the third degree and was sentenced to 20 to 40 years in prison.

On September 29, 2016, Appellee, Anna Carrasquillo, Santiago's mother, initiated a wrongful death and survival action, individually and as executrix of the Estate of Santiago, against Nancy Kelly and James Kelly in the Philadelphia Court of Common Pleas.[3]

Of particular relevance, Paragraph 8 of the Carrasquillo's wrongful death complaint alleged the following:

> 8.     On or about October 5, 2014, plaintiff's decedent, Rafael Santiago, was **attacked** by defendant, James Kelly, and **fatally shot** resulting in plaintiff's decedent's death.

Carrasquillo's Complaint at ¶ 8 (emphasis added).

---

[1] The Complaint does not indicate the relationship between Nancy and James Kelly.

[2] We note that Nationwide does not dispute James or Nancy Kelly's status as an insured under the policy.

[3] According to this Complaint, Nancy Kelly currently resides in North Fort Myers, Florida, and James Kelly resides at SCI Camp Hill, Camp Hill, Pennsylvania.  It does not appear that Nancy Kelly participated in the declaratory judgment action below; counsel for Nancy Kelly did not enter his appearance with the trial court until after the court entered its order denying Nationwide's motion for summary judgment.  A brief was filed on Nancy Kelly's behalf in this appeal.

Paragraph 10 of Carrasquillo's wrongful death complaint alleged the following:

10. The **accident** was caused exclusively and solely by the defendant's **negligence**, in that:

(a) Defendants caused or permitted dangerous conditions to exist;

(b) Defendants failed to have the lethal weapons stored safely and securely so that other individuals could not access them;

(c) Defendants failed to give warning that the lethal weapons were not stored safely and securely such that defendant, James Kelly, could access them and **cause harm to others**;

(d) Defendants failed to remove the dangerous condition;

(e) Defendants failed to exercise reasonable prudence and due care to keep the household safe for others;

(f) Defendants failed to prevent **a person with known dangerous propensities** to have access to lethal weapons;

(g) Defendants were **negligent** in causing injury and death to plaintiff's decedent, Rafael Santiago; and

(h) Defendants was [sic] otherwise **negligent** under the circumstances.

*Id.* at ¶ 10 (a)-(h)(emphasis added).

After filing this complaint, Carrasquillo requested Nationwide to defend its insured, Nancy Kelly, and indemnify her for the claims in the wrongful death action. Nationwide refused to provide a defense for Nancy Kelly or indemnify her based upon exclusions in her homeowners' insurance policy.

- 3 -

The Nationwide Homeowners' Policy insuring the Kellys provided liability coverage as follows:

SECTION II -LIABILITY COVERAGES

Page GI

Coverage agreements
Coverage E -Personal Liability

We will pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

This coverage is excessive over other valid and collectible insurance. It does not apply to insurance written as excess over the applicable limits of liability.

SETION II -LIABILITY COVERAGES

Page G2

Additional liability coverages
We will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.

1. Claims Expense. We will pay:
   a) Expenses we incur and costs levied against an insured in a legal action we defend, including prejudgment interest on that portion of the award which does not exceed the limit of this coverage....

Nationwide Policy at G1-G2.

The liability coverages provided by this policy were subject to the following exclusions:

SECTION II -LIABILITY EXCLUSIONS

1. Coverage E - Personal Liability and Coverage F - Medical
Payments to Others do not apply to bodily injury or property damage:

    a) by an act **intending** to cause harm done by or at the
    direction of **any insured**.

    This exclusion does not apply to corporeal punishment of
    pupils.

    b) caused by or resulting from an act or omission which is
    **criminal** in nature and committed by **an insured**.

    This exclusion 1.b) applies regardless of whether the insured
    is actually charged with, or convicted of a crime.

Nationwide Policy at H1 (emphasis added).

On October 5, 2017, Carrasquillo filed a separate action, which is the subject of this appeal, seeking a declaratory judgment. Specifically, Carrasquillo requested an order from trial court declaring that the allegations set forth in the wrongful death complaint were covered by the Kelly policy (i.e. not excluded) from coverage, and therefore Nationwide had a duty to defend and indemnify its insured, Nancy Kelly. Declaratory Judgment Complaint, at ¶ 11.

On October 31, 2017, Nationwide attempted to remove the declaratory judgment action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1331, 1332, and 2201-2202. However, on April 17, 2018, the Eastern District Court issued a Memorandum Opinion, concluding that Carrasquillo had no standing to file a declaratory judgment action asking the court to declare the rights between an insurance company

(Nationwide) and its insured (Nancy Kelly).[4] On that basis, the District Court determined there was no actual and justiciable controversy sufficient to provide it with subject matter jurisdiction. *Carrasquillo v. Kelly, et al*., 17-4887 at 7-8 (E.D. Pa. April 17, 2018). On May 15, 2018, the District Court remanded the declaratory judgment action to the Court of Common Pleas of Philadelphia, pursuant to 28 U.S.C. § 1447(c).

On July 3, 2018, Nationwide filed a motion for summary judgment in the state declaratory judgment action. Essentially, Nationwide argued that the intentional and criminal acts of insured James Kelly triggered the intentional and criminal act exclusions under the policy and precluded coverage to Nancy Kelly. In support of its position, Nationwide attached a copy of the criminal docket, reflecting James Kelly's guilty plea and term of imprisonment. Nationwide requested that the trial court enter an order granting its motion for summary judgment and a decree declaring that Nationwide had no duty to defend Nancy Kelly in the underlying wrongful death action.

_____

[4] The District Court observed that this was not a typical declaratory judgment action filed by the insurance company, but rather an action filed by an injured party seeking to declare the rights of third parties. Under these circumstances, the court found "[c]learly, Carrasquillo is asserting the legal interests of a third party (Nancy Kelly) rather than her own and, thus, has no standing to pursue such a claim. Further, Carrasquillo has not alleged that she has been assigned any rights of Nancy Kelly under the Nationwide insurance policy at issue." *Carrasquillo v. Kelly, et al*., 17-4887 at 8 (E.D. Pa. April 17, 2018).

- 6 -

On July 26, 2018, Carrasquillo filed an answer in opposition to Nationwide's motion for summary judgment. Carrasquillo argued that the allegations in the wrongful death complaint triggered coverage because **Nancy Kelly's actions** sounded in negligence, and were not intentional or criminal acts, which would support a preclusion of coverage. Carrasquillo maintained that Nancy Kelly's actions were independent and separate from those of James Kelly and, therefore, Nationwide was obligated to provide a defense for those claims.

On August 8, 2018, the trial court denied Nationwide's motion for summary judgment. Nationwide filed a timely notice of appeal. Both Nationwide and the trial court complied with Pennsylvania Appellate Rule of Procedure 1925.

Nationwide raises three questions for our review on appeal:

1. Did the [trial court] err[] by denying [Nationwide's] Motion for Summary Judgment when the criminal act exclusion contained within Nationwide homeowners policy number 58 37 HO 483403 at SECTION II - LIABILITY EXCLUSIONS 1.(b) applied, based upon the clear and undisputed allegations of the Complaint in the underlying bodily injury action docketed at Philadelphia CCP No. 160903564, and the undisputed facts in support of the Motion for Summary Judgment including the fact that Mr. Santiago was intentionally killed by a resident relative "insured" of the named insured Nancy Kelly's household?

2. Did the [trial court] err by [] denying [Nationwide's] Motion for Summary Judgment when the intentional act exclusion contained within Nationwide homeowners policy number 58 37 HO 483403 at SECTION II - LIABILITY EXCLUSIONS 1.(b) applied, based upon the clear and undisputed allegations of the Complaint in the underlying bodily injury action docketed at No. 160903564, and the undisputed facts in support of the Motion for Summary

Judgment including the fact that Mr. Santiago was attacked, shot and killed by a resident relative "insured" of the named insured Nancy Kelly's household?

3. Did The [trial court] err by misapplying the well-established law in the Commonwealth of Pennsylvania that where an applicable exclusion such as the present criminal act exclusion precludes coverage due to the conduct of "an insured" creating joint obligations of the insureds, that there is no coverage for any insured [] under the terms of the current Nationwide policy[?]

Nationwide's Brief at 6-8 (citations omitted).

Initially, we note that, generally, an appeal from an order denying summary judgment is not appealable as of right. *Good v. Frankie & Eddies Hanover Inn, LLP*, 171 A.3d 792, 794 (Pa. Super. 2017). As we have explained, this Court is obligated to "first ascertain whether the [order appealed from] is properly appealable, because the question of appealability implicates the jurisdiction of this [C]ourt." *Commonwealth v. Borrero,* 692 A.2d 158, 159 (Pa. Super. 1997). Thus, preliminarily, we must address whether this appeal is appropriately before this Court. Based upon our review, we conclude that the trial court's order constituted a final order under Pa.R.A.P. 341(b)(2) because it is expressly defined as a final order under Section 7532 of the Declaratory Judgment Act, 42 Pa.C.S.A. § 7532. That section provides:

Courts of record, within their respective jurisdictions, shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

- 8 -

42 Pa.C.S.A. § 7532.

Pursuant to Pa.R.A.P. 341(b)(2), an order is final if it is expressly so defined by a statute. The Supreme Court has held that Section 7532 defines any order in a declaratory judgment action that either affirmatively or negatively declares "rights, status, and other legal relations" as a final order. *See* 42 Pa.C.S.A. § 7532; *see also* Pa.R.A.P. 341(b)(1) (providing that "[a] final order is 'any order that disposes of all claims and of all parties[.]'"); *Good*, 171 A.3d at 794; *National Cas. Co. v. Kinney*, 90 A.3d 747, 754 (Pa. Super. 2014).

Here, by concluding that the exclusions in the policy did not apply and denying Nationwide's motion for summary judgment, the trial court's order effectively declared that Nationwide had a duty to defend, and thus, potentially indemnify, Nancy Kelly in the underlying action.[5] Thus, all of the claims raised in the declaratory judgment action have been resolved. As such, this Court has jurisdiction over this appeal pursuant to 42 Pa.C.S.A. § 742.[6]

---

[5] We note that the duty to defend is broader than the duty to indemnify. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 908 A.2d 888, 896 n.7 (Pa. 2006).

[6] This section provides:

> The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

*See Kinney*, 90 A.3d at 755 (concluding that trial court, by denying motion for summary judgment in declaratory judgment action, effectively resolved all issues, and therefore, the order was immediately appealable).

Nancy Kelly argues, however, that when the trial court merely denied the motion, as opposed to making a declaration, the order was not a final appealable order. Kelly's Brief at 5. We disagree.

Contrary to Kelly's argument, in *Nationwide Mut. Ins. Co. v. Wickett*, 763 A.2d 813, 818 (Pa. 2000), our Supreme Court specifically addressed this issue and concluded that a court was not required to specifically make a declaration of rights. *Id.* "Rather, [Section 7532] affords the courts broad discretion in crafting declaratory judgment orders by permitting such orders to be either affirmative or negative in form and effect." *Id.* For finality, the critical question is whether the order fully resolved the claims raised in the declaratory judgment action, or simply narrowed the scope of the action's claims. *Modern Equip. Sales & Rental Co. v. Main St. Am. Assurance Co.*, 106 A.3d 784 (Pa. Super. 2014 (*en banc*). If the order resolved the claims, it is a final order. As stated above, the trial court's order fully resolved the dispute Carrasquillo raised in her declaratory judgment action.

Additionally, before addressing the merits of Nationwide's appeal, we must consider whether this matter is properly before us. Nancy Kelly contends that this Court lacks subject matter jurisdiction. Specifically, she claims that

42 Pa.C.S.A. § 742.

Carrasquillo lacks standing to bring this action. Nancy Kelly's Brief at 9. She argues that the U.S. District Court would not decide the case for this very reason. *Id.* at 16. Thus, this Court should dismiss Carrasquillo's appeal. *Id.* We disagree.

Generally, a plaintiff must have standing to bring a declaratory judgment action. Additionally, a court must have subject matter jurisdiction to proceed with a case. However, unlike the federal law, under Pennsylvania law, standing and subject matter jurisdiction are distinct concepts and are not interdependent. We note that in the federal courts, the standing doctrine emanates from the Constitution. **ASARCO Inc. v. Kadish**, 490 U.S. 605 (1989) (the federal courts' standing doctrine springs from the "case or controversy" requirement contained in Article III of the United States Constitution). State courts, however, are not governed by Article III and are, thus, not bound to adhere to the federal definition of standing. **Id.** at 2045. Furthermore, the Pennsylvania Constitution has no counterpart to Article III's "case or controversy" requirement. **See, e.g., Appeal of Lansdowne Borough Board of Adjustment**, 170 A. 867 (Pa. 1934).

Under Pennsylvania jurisprudence, standing relates to a party's right to make a legal claim or seek judicial enforcement. Subject matter jurisdiction, on the other hand, concerns the court's authority to consider cases of a given nature and grant the type of relief requested. As such, "[i]t is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte.*" **B.J.D. v. D.L.C.,** 19 A.3d 1081, 1082

(Pa. Super. 2011) (quoting **Grom v. Burgoon**, 672 A.2d 823, 824–25 (Pa. Super. 1996)).

However, standing is not jurisdictional. Consequently, this Court has explained that "[i]n Pennsylvania, whether a party has standing to maintain an action is not a jurisdictional question. Thus, an issue relating to standing is waivable." **Grimm v. Grimm**, 149 A.3d 77, 83 (Pa. Super. 2016) (internal quotation marks, brackets, footnote, and citations omitted); **see also Adoption of Z.S.H.G.**, 34 A.3d at 1289 (clarifying that "standing is **not** intertwined with subject matter jurisdiction [even] when a statute designates who may sue" and is therefore subject to waiver) (emphasis in original).

Based on our review of the record, no one challenged Carrasquillo's standing to bring this declaratory judgment action in the state court below. Instead, Nancy Kelly only raised it for the first time on appeal. Her standing challenge is therefore waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **In re Paulmier**, 937 A.2d 364, 368 n. 1 (Pa. 2007) (unlike subject matter jurisdiction, an issue concerning standing is subject to waiver); **In re Adoption of Z.S.H.G.**, 34 A.3d 1283, 1289–90 (Pa. Super. 2011). We now turn to the merits of Nationwide's issues presented on appeal.

Nationwide raises three separate issues relating to the trial court's denial of its motion for summary judgment. We note that all of these issues involve the interpretation of an insurance contract, namely whether the policy covers the claims Carrasquillo alleged in the underlying complaint or whether

an exclusion applies. Specifically, at issue are two separate exclusions, the intentional act exclusion and the criminal act exclusion. We, therefore, address Nationwide's issues together.

We begin our analysis by noting the applicable scope and standard of review for appellate review of a motion for summary judgment:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*QBE Ins. Corp. v. M & S Landis Corp.,* 915 A.2d 1222, 1225 (Pa. Super. 2007), *appeal denied,* 956 A.2d 436 (2008) (quoting *Pappas v. Asbel*, 768 A.2d 1089, 1095 (Pa. 2001)).

Furthermore, here, the trial court entered summary judgment on the basis of its interpretation of an insurance policy as to the existence or non-existence of coverage. This Court has summarized the law regarding an insurer's duty to defend and indemnify as follows:

> The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court. Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract. If doubt or ambiguity exists it should be resolved in [the] insured's favor.

- 13 -

An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions. In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend. As this Court has summarized: The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage.

Moreover, the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent. . . .

Pennsylvania recognizes that a duty to defend is broader than the duty to indemnify. Accordingly, even if there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage, the insurer would have a duty to defend until it could confine the claim to a recovery excluded from the policy. The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. . . . Significantly, [i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend. In making this determination, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured.

*Penn–America Ins. Co. v. Peccadillos, Inc.,* 27 A.3d 259, 264–65 (Pa. Super. 2011) (citations and quotation marks omitted). The interpretation of an insurance policy is a question of law. *Kvaerner,* 908 A.2d at 893. Our standard of review is *de novo,* and thus, we need not defer to the findings of the trial court. *Id.* Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. *Id.*

On appeal, Nationwide contends that the trial court erred when it concluded that neither the intentional act exclusion nor the criminal act exclusion applied and denied its motion for summary judgment. No one challenged whether these exclusions applied to James Kelly. The issue is

whether the intentional act and/or criminal act exclusion contained in the homeowners' policy applies to deny coverage to Nancy Kelly, an innocent co-insured, since she did not shoot Santiago. Nationwide's Brief at 31.

Carrasquillo and Nancy Kelly argue that neither exclusion applies. First, they claim that the intentional act exclusion does not apply in this case because the allegations in Carrasquillo's complaint do not clearly demonstrate that the shooting was intentional. Since the circumstances surrounding the shooting are unknown at this time, it is unclear whether James Kelly intended to harm Santiago. Carrasquillo's Brief at 16-18.

Furthermore, the complaint clearly states that the incident resulting in Santiago's injuries was caused exclusively and solely by the defendants' negligence. Thus, considering only the allegations of the complaint, which the Court is required to do, Carrasquillo's claims potentially fall within the scope of the policy and trigger coverage. Carrasquillo's Brief at 12-14, 18; Kelly's Brief at 18-19.

Similarly, Carrasquillo argues that the criminal act exclusion also does not apply because the complaint characterizes the shooting as an accident. Carrasquillo claims Nancy Kelly's actions were negligent, not criminal. Carrasquillo's Brief at 19. Thus, according to Carrasquillo and Kelly, the trial court correctly denied summary judgment. Carrasquillo's Brief at 18; Kelly's Brief at 19.

The trial court found that a genuine issue of fact existed regarding the actions of Nancy Kelly, namely, whether she acted negligently in storing the

gun, in allowing James Kelly access to the gun, and/or in failing to inform Santiago that the gun was accessible. Trial Court Opinion, 3/25/19, at 10. Thus, the trial court determined that the intentional act and criminal act exclusions did not apply. Comparing the four corners of the insurance contract to the four corners of the complaint, there are no allegations that Nancy Kelly acted criminal or intentionally. Trial Court Opinion, 3/25/19, at 10. The trial court, therefore, concluded that Nationwide was required to defend, and potentially indemnify, Nancy Kelly in the underlying action and denied Nationwide's request for summary judgment. *Id.* at 11. Based upon our review of the record and applicable law, we disagree.

First, we consider whether the trial court erred in determining that the criminal act exclusion did not apply. That exclusion provides that Nationwide does not cover payments for bodily injury or property damage "caused by or resulting from an act or omission which is **criminal in nature** and committed by **an insured**" regardless of whether the insured is actually charged with, or convicted of a crime.

Here, it is undisputed that James Kelly pled guilty to third degree murder for shooting Santiago, which formed the basis of the underlying wrongful death complaint. Nationwide raised James Kelly's criminal conviction as an affirmative defense to the declaratory judgment action. To support its motion for summary judgment, Nationwide attached a copy of the criminal docket reflecting James Kelly's guilty plea and sentence. Carasquillo presented no evidence to dispute his conviction.

Typically, we are required to consider only the allegations contained in the underlying complaint to determine whether an insurer has a duty to defend. In her wrongful death complaint, Carrasquillo alleged the criminal nature of this incident by alleging that James Kelly, who had "dangerous propensities", "attacked" and "fatally shot" Santiago. Carrasquillo's Complaint ¶ 8.

This Court has stated that coverage determinations should not depend upon the "use of artful pleadings designed to avoid exclusions in liability insurance policies." **Steyers v. Bedford Grange Mut. Ins. Co.**, 900 A.2d 895 (Pa. Super. 2006). It is evident that Carrasquillo artfully crafted her complaint, and omitted any reference to James Kelly's conviction. We are compelled to consider the conviction in determining whether the criminal act exclusion applies in this case. There is no question that James Kelly's conviction for third degree murder triggers the criminal act exclusion and clearly precludes any coverage for him. However, whether the criminal conduct of one insured (here, James Kelly) vitiates coverage for claims of negligence asserted against another insured (here, Nancy Kelly) depends on the language in the policy.

Generally, courts have held that where exclusionary policy language refers to the conduct of "*any insured*" and "*anyone* we protect", the policy precludes an innocent insured from coverage. Use of "*an insured*", likewise, equates to "*any insured*". **General Acc. Ins. Co. of Am. v. Allen**, 708 A.2d 828, 832 (Pa. Super. 1998), appeal denied 764 A.2d 1070 (2000). Courts

- 17 -

have found this terminology to be unambiguous. Under these policies, courts apply the exclusion to all persons covered by the policy, including an innocent co-insured.

For example, in **McAllister v. Millville Mut. Ins. Co.,** 640 A.2d 1283, 1288 (Pa. Super. 1994), this Court held that "if the language of the policy, particularly the exclusionary clause, clearly indicates that the insureds' obligations are joint, then the prohibited acts of one insured bar all others from recovering." **McAllister** involved three insured brothers. One committed arson by burning down the subject property; the other two sought coverage for the loss. There, we held that, "[t]he use of the terms **'any'** and **'an'** in the exclusions clearly indicate that the insureds' obligations under the policy's neglect and intentional provisions are **joint**, not several ... [such that] the intentional actions of [the arsonist brother] bar any recovery by [other brothers]." **Id.** at 1289 (emphasis added).

We reached the same conclusion in **Donegal Mut. Ins. v. Baumhammers**, 893 A.2d 797, 818 (Pa. Super. 2006), *affirmed in part*, *reversed in part*, 938 A.2d 286 (2007). In that case, the plaintiffs filed claims against the parents of a mass shooter, Jeffrey Baumhammers, alleging that Baumhammers' parents were negligent by failing to take away his guns or report his dangerous propensities to authorities. The excess policy at issue contained a criminal act exclusion, which excluded coverage for bodily injury or damage arising out of a criminal act of "**any insured**" whether or not such insured is convicted of a crime. The parents claimed that the criminal act

exclusion barred coverage for their son only, since he committed the underlying criminal acts. Nonetheless, because the language of the exclusion was clear and applied to criminal behavior of "***any insured***," we concluded that the criminal act exclusion applied to the parents.[7] ***Id.***

On the other hand, courts have held that where exclusionary language refers to conduct of "***the insured***," coverage is excluded only for the insured in question, but other insureds are still covered under the policy. ***See Allen***, 708 A.2d at 832; ***Maravich v. Aetna Life and Casualty Co.***, 504 A.2d 896 (Pa. Super. 1985) (where coverage was found for an innocent co-insured under policy language excluding coverage for loss resulting from the neglect of **the insured** where her husband had intentionally set their house on fire and she had not.)

Here, the exclusionary language in the policy excludes coverage for the criminal act of "***an insured***." Indisputably, James Kelly is "***an insured***" under the policy. Additionally, James Kelly committed a criminal act, third degree murder, which is the harm in Carrasquillo's underlying wrongful death action. Based upon the foregoing discussion, we are constrained to conclude that the policy excludes coverage for Nancy Kelly based on the criminal act of James Kelly. As a matter of law, Nationwide is not obligated to defend or indemnify

---

[7] We note that although this case was appealed to our Supreme Court, the applicability of the criminal act exclusion was not addressed.

Nancy Kelly in the underlying action.  We, therefore, conclude that the trial court erred in denying Nationwide's motion for summary judgment.[8]

Judgment vacated. Order denying Nationwide's motion for summary judgment reversed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/12/19

---

[8] Because the applicability of the criminal act exclusion is dispositive of this matter, it is not necessary for us to address the applicability of the intentional act exclusion.