J-A15043-17

2017 PA Super 302

FLORENCE A. GOOD, INDIVIDUALLY : IN THE SUPERIOR COURT OF
AND AS EXECUTRIX OF THE ESTATE OF : PENNSYLVANIA
BARRY D. GOOD, DECEASED, :
:
    Appellant :
:
      v. :
:
FRANKIE & EDDIE'S HANOVER INN, LLP :
:
RCA INSURANCE GROUP ON BEHALF :
OF STATE NATIONAL INSURANCE :
COMPANY : No. 2006 MDA 2016

Appeal from the Order entered November 15, 2016
in the Court of Common Pleas of Berks County,
Civil Division, No(s): 13-15184

BEFORE:  MOULTON, SOLANO and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.: **FILED SEPTEMBER 21, 2017**

Florence A. Good ("Good"), individually and as executrix of the Estate

of Barry D. Good, deceased ("the Estate"), appeals from the Order denying

Good's Motion for Summary Judgment in a declaratory judgment action

against Frankie & Eddie's Hanover Inn, LLP ("Hanover Inn"), and RCA

Insurance Group ("RCA"), on behalf of State National Insurance Company,

and denying as moot RCA's Cross-Motion for Summary Judgment.[1] We affirm.

On April 4, 2012, at approximately 10:56 p.m., Barry D. Good ("the Deceased") was fatally injured when a Ford F250, driven by Francis Lynch ("Lynch"), collided with the Deceased's Kawasaki Vulcan Motorcycle. At the time of the accident, Lynch was driving under the influence of alcohol, which had been served to him at Hanover Inn.[2]

On the date of the accident, Hanover Inn was covered by a commercial insurance policy ("the Policy") issued by RCA. The Policy includes a Liquor Liability Coverage Form,[3] which provides for liquor liability coverage with an

---

[1] "[A]n order denying summary judgment is ordinarily a non-appealable interlocutory order." ***McDonald v. Whitewater Challengers, Inc.***, 116 A.3d 99, 104 (Pa. Super. 2015). However, an order in a declaratory judgment action that either affirmatively or negatively declares rights, status, and other legal relations is a final order. ***See*** 42 Pa.C.S.A. § 7532; ***see also*** Pa.R.A.P. 341(b)(1) (providing that "[a] final order is "any order that disposes of all claims and of all parties[.]"); ***Nat'l Cas. Co. v. Kinney***, 90 A.3d 747, 754 (Pa. Super. 2014). Here, in its Order denying summary judgment, the trial court effectively resolved all of the claims presented in the declaratory judgment action. Therefore, the Order is final and appealable. ***See Kinney***, 90 A.3d at 755 (concluding that trial court, by denying motion for summary judgment in declaratory judgment action, effectively resolved all issues, and therefore, the order was immediately appealable).

[2] Good filed a wrongful death and survival action against Lynch and Hanover Inn.

[3] The Liquor Liability Coverage Form appears to be a standard insurance policy form provided by Insurance Services Office, Inc. ("ISO").

J-A15043-17

"Aggregate Limit," as well as an "Each Common Cause Limit."[4]   The Declarations page of the Policy specifies that the liquor liability coverage limit for "Each Occurrence" is $500,000, and the "Aggregate" limit is $1,000,000.

During the pendency of the wrongful death and survival action, a dispute arose regarding the applicable amount of coverage under the Policy. The parties entered into a settlement agreement for the underlying action, whereby RCA agreed to pay the undisputed amount of $500,000 on behalf of Hanover Inn.  The parties also agreed that a court of competent jurisdiction would resolve the dispute pertaining to the remaining $500,000.  An

---

[4] The relevant portion of the Policy's Liquor Liability Coverage Form provides as follows:

**Section III – Limits of Insurance**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;
    b. Claims made or "suits" brought; or
    c. Persons or organizations making claims or bringing "suits."

2. The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

3. Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations **as the result of the selling, serving or furnishing of any alcoholic beverage to any one person**.

Liquor Liability Coverage Form at 3 (emphasis added).

- 3 -

additional $15,000 was paid by Safe Auto Insurance Company, on behalf of Lynch, for bodily injury.

On June 17, 2013, Good filed a Complaint, seeking relief in the nature of a declaratory judgment that the applicable liability limit is the $1,000,000 "Aggregate Limit," resulting in an additional payment of $500,000.

On July 23, 2013, RCA filed an Answer and Counterclaim for Declaratory Relief, asserting that the applicable liability limit is the $500,000 "Each Occurrence Limit."

Good filed a Motion for Summary Judgment on August 22, 2016, alleging that there were no genuine issues of material fact in dispute. RCA filed a Cross-Motion for Summary Judgment on September 19, 2016, asserting that the Policy unambiguously provides for a lower "Each Common Cause Limit," and a higher "Aggregate Limit." By Order dated November 15, 2016,[5] the trial court denied Good's Motion for Summary Judgment, denied as moot RCA's Cross-Motion for Summary Judgment, and determined that the lower "Each Occurrence/Each Common Cause Limit" is applicable, rather than the higher "Aggregate Limit."

Good filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On appeal, Good raises the following issues for our review:

A. Whether the trial court erred in determining that the liquor liability coverage available to [Good] is in the amount of

_____

[5] The Order was docketed on November 21, 2016.

- 4 -

$500,000 [,] where the [L]iquor [L]iability [C]overage [F]orm does not contain the term "occurrence[,]" and where[,] as delineated in the [L]iquor [L]iability [C]overage [F]orm[,] $1,000,000[] in liquor liability coverage was available to [Good,] given the clear and unambiguous language contained in the [L]iquor [L]iability [C]overage [F]orm[?]

B. In the alternative, whether the trial court erred in determining the term "occurrence" was unambiguous in the absence of a definition for that term in the [P]olicy[?]

C. Also, in the alternative, whether the trial court erred in applying the "[E]ach [O]ccurrence" limit as the "[E]ach [C]ommon [C]ause [L]imit" where those terms are not interchangeable within the insurance industry[?]

Brief for Appellant at 5.

Our standard of review in evaluating a trial court's grant or denial of summary judgment is well-settled:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Hall v. CNX Gas Co., LLC*, 137 A.3d 597, 601 (Pa. Super. 2016) (citation omitted).

We will address Good's claims together. In her first claim, Good asserts that the trial court erred in determining that liquor liability coverage was available in the amount of $500,000, rather than $1,000,000. Brief for Appellant at 13. Good claims that the language of the Policy, read in its

- 5 -

entirety, provides liquor liability coverage in the amount of $1,000,000. *Id.* at 15-16. Good points out that the Policy provides for payment of the "Aggregate Limit," unless the "Each Common Cause Limit" applies, but argues that there is no definition of the "Each Common Cause Limit" in the Declarations page of the Policy. *Id.* at 17. Good asserts that the language of the Policy is unambiguous, and therefore, the trial court was only permitted to look at the terms of the Policy itself. *Id.* at 20. Good also contends that the trial court's determination that the parties intended for there to be two separate and distinct limits of liquor liability coverage was mere speculation. *Id.* at 21.

In her second claim, Good argues, in the alternative, that the trial court erred in determining that the term "occurrence" is unambiguous, absent a definition in the Policy. *Id.* at 22. Good avers that the ambiguity should be interpreted in favor of the insured, resulting in an available $500,000 for each "category" of damage (*i.e.*, wrongful death action and survival action). *Id.*

In her third claim, Good contends that the trial court erred in applying the "Each Occurrence" limit as the "Each Common Cause" limit, because those terms are not interchangeable within the insurance industry. *Id.* at 23. Good cites to the report of Craig F. Stanovich, wherein Stanovich provided the following opinions: 1) it is not insurance industry custom to use the phrases "Each Occurrence" and "Each Common Cause" interchangeably

in general liability insurance policies; 2) the definition of "occurrence" applies only to the Commercial General Liability Coverage Form and cannot be incorporated into and used with the Liquor Liability Coverage Form; and 3) the Policy's Declarations page is not an ISO form, and therefore is not applicable to the Liquor Liability Coverage Form. *Id.* at 24-27.

> The interpretation of an insurance contract is a matter of law and is generally performed by a court. The goal of insurance contract interpretation is to ascertain the intent of the parties as manifested by the language of the written instrument. When analyzing an insurance policy, a court must construe words of common usage in their natural, plain, and ordinary sense. If the language of the insurance contract is clear and unambiguous, a court is required to give effect to that language. A court must not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

*D'Adamo v. Erie Ins. Exch.*, 4 A.3d 1090, 1096 (Pa. Super. 2010) (internal citations, quotation marks, and brackets omitted); *see also Mitsock v. Erie Ins. Exch.*, 909 A.2d 828, 831 (Pa. Super. 2006) (stating that "courts should try to read policy provisions to avoid ambiguities, if possible…." (citation and quotation marks omitted)). However, "where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Windows v. Erie Ins. Exch.*, 161 A.3d 953, 957 (Pa. Super. 2017) (citation, quotation marks and brackets omitted). Additionally, "[w]hen an ambiguity in contractual language exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent,

created by extrinsic or collateral circumstances." *Id.* (citation and quotation marks omitted).

Here, the trial court considered Good's claim, and determined that the applicable coverage limit was the $500,000 "Each Occurrence/Each Common Cause Limit," rather than the $1,000,000 "Aggregate Limit," stating the following:

> [The trial court] has examined the insurance policy in light of the above [contract interpretation] standards and the mutual intent of the parties to contract for insurance. It is clear … [that] the intentions of the parties are clear and unambiguous. The facts of this case make clear that a quote was obtained from RCA for a policy of insurance that included liquor liability coverage with two separate and distinct liquor liability limits. Those limits being $500,000 per occurrence and $1,000,000 aggregate. … It is abundantly clear that at all times the parties intended for there to be two separate and distinct limits of liquor liability, an occurrence limit of $500,000 and an aggregate limit of $1,000,000. There is no way that [the trial court] can construe the facts to believe that the parties had only intended a policy of liquor liability that contained only a single $1,000,000 limit.
>
> ….
>
> [The trial court] has found the contract language to be unambiguous. The [L]iquor [L]iability [C]overage [F]orm clearly states that there are two limits of liquor liability coverage. The ["Aggregate Limit"] is clearly $1,000,000. The lower limit, although referenced as "[E]ach [O]ccurrence" in the [P]olicy, is not reasonably susceptible of a different construction or capable of being understood in more than one sense to mean anything other than the "[E]ach [C]ommon [C]ause [L]imit["] set out in the [L]iquor [L]iability [Coverage F]orm. To hold otherwise would defeat the clear and unambiguous intentions of the parties to contract for two separate and distinct limits for liquor liability. When viewed in the light of the intent of the parties and the reasonable expectations of the insureds, it is clear that [Good's]

interpretation of the [P]olicy would lead to a result not contemplated by the parties.

[RCA] contends, and [the trial court] agrees[,] that the fact that the [D]eclaration[s] page of the [P]olicy does not contain an express "[E]ach [C]ommon [C]ause [L]imit["] does not mean that it should be converted into something that it is not—a policy with [neither an] "Each Occurrence [Limit,]" nor an "[E]ach [C]ommon [C]ause [L]imit["] for liquor liability coverage. It is clear that RCA contemplates two separate limits. The [D]eclaration[s] page includes two separate limits, one for "[E]ach [O]ccurrence" and one for "[A]ggregate." The only reasonable conclusion, consistent with the intention of the parties and the reasonable expectations of the insureds, is to apply the "[E]ach [O]ccurrence [L]imit["] as the "[E]ach [C]ommon [C]ause [L]imit["]. This is the only possible interpretation that provides for two[] separate and distinct limits, one higher and one lower[,] that is required by the language of the [L]iquor [L]iability [C]overage [F]orm.

Trial Court Opinion, 1/25/17, at 6, 7-8. Upon review, we conclude that the trial court's interpretation is sound and free of legal error, and we affirm on this basis as to Good's claims. **See id.**[6] Accordingly, the trial court properly denied Good's Motion for Summary Judgment.

Order affirmed.

Judgment Entered.

_[signature]_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2017

---

[6] We additionally observe that the trial court's interpretation is consistent with the definition of the "Each Common Cause Limit" set forth in the Liquor Liability Coverage Form. **See** Liquor Liability Coverage Form at 3.