J-A01018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SEAGRAVE FIRE APPARATUS, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CNA D/B/A CONTINENTAL CASUALTY COMPANY AND THE CONTINENTAL INSURANCE COMPANY,; AND LEXINGTON INSURANCE COMPANY D/B/A NATIONAL UNION FIRE INSURANCE COMPANY OF PENNSYLVANIA AND AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY; AND NATIONWIDE ON BEHALF OF LIBERTY MUTUAL D/B/A EMPLOYERS MUTUAL LIABILITY, OTHERWISE KNOWN AS WAUSAU INSURANCE; AND RSUI D/B/A LANDMARK AMERICAN INSURANCE COMPANY; AND ACE D/B/A CENTENNIAL INSURANCE COMPANY, CENTURY INDEMNITY, CAL UNION, INA/AETNA, CIGNA INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA AND WESTCHESTER FIRE INSURANCE COMPANY; AND CHARTIS INSURANCE D/B/A AMERICAN HOME ASSURANCE; AND AXIS SURPLUS INSURANCE COMPANY; AND ROYAL SURPLUS LINES D/B/A/ ARROWPOINT; AND ONEBEACON D/B/A EMPLOYERS LIABILITY ASSURANCE; AND THE HARTFORD D/B/A NEW ENGLAND REINSURANCE AND FIRST STATE INSURANCE COMPANY; AND ZURICH D/B/A NORTH INSURANCE COMPANY OF NEW YORK AND STEADFAST INSURANCE COMPANY; AND LEXINGTON CASUALTY INSURANCE D/B/A AMERICAN HOME ASSURANCE | |

J-A01018-18

(CHARTIS); AND INTERSTATE FIRE AND
CASUALTY COMPANY D/B/A FIREMAN'S
FUND; AND ADMIRAL INSURANCE
COMPANY; AND CRUM AND FORSTER
D/B/A/ UNITED STATES FIRE
INSURANCE COMPANY

No. 2497 EDA 2017

Appeal from the Order Entered June 29, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: September Term, 2014 No. 02677

BEFORE: LAZARUS, J., OTT, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 26, 2018**

Appellant, Admiral Insurance Company, appeals from the trial court's

order denying its motion for summary judgment, and granting the motion for

summary judgment of Nationwide Indemnity Company, Steadfast Insurance

Company, and Landmark Insurance Company (collectively, Appellees).

Specifically, the trial court found that Appellant has a duty to contribute to the

defense of Seagrave Fire Apparatus, Inc. ("Seagrave") in claims asserted

against it, as explained more fully below. We affirm.

We take the procedural and factual background of this matter from the

trial court's June 29, 2017 opinion.

> Plaintiff [Seagrave] is a Wisconsin corporation which has for
> many decades manufactured fire engines. Seagrave is a
> defendant in at least 455 occupational noise induced hearing loss
> claims brought by fire department personnel, who allege their
> deafness was caused by continued exposure to the sounds of the

_____

* Retired Senior Judge assigned to the Superior Court.

- 2 -

sirens installed by [Appellant] on its fire engines. The exposure of some of the underlying plaintiffs allegedly began in the 1960's. In this coverage action, Seagrave seeks payment of defense costs by all the insurers who issued policies to it over more than 50 years.

Many of those insurers have agreed to share in the costs of Seagrave's defense of the underlying actions under reservations of rights. However, [Appellant] refuses to provide a defense and has moved for a summary, declaratory judgment that it has no duty to defend or indemnify Seagrave in the underlying actions. [Appellees], who asserted cross-claims for contribution and indemnity and equitable contribution against [Appellant], moved for summary judgment on those claims as well. . . .

(Trial Court Opinion, 6/29/17, at 1-2). The trial court denied Appellant's

motion and granted Appellees' motion on June 29, 2017, finding Appellant had

a duty to defend Seagrave. Appellant timely appealed.

Appellant raises three issues for the Court's review.

1. Did the trial court err in its determinations that policies provided primary coverage for continuous losses and that the other insurance-continuous losses endorsement does not exclude primary coverage for continuous losses like [noise induced hearing loss (NIHL)] and, rather, only provides excess coverage for NIHL claims that fall within the temporal limits prescribed by the endorsement?

2. Did the trial court err in its determination that attorneys' fees are not subject to the self-insured retention endorsement and, therefore, Seagrave's self-insured retention obligations have no bearing on [Appellant's] duty to contribute to Seagrave's defense costs?

3. Did the trial court abuse its discretion in limiting discovery in this matter to the collection of all applicable insurance policies issued by defendants when full and open discovery would have produced evidence sufficient for [Appellant] to sustain its burden of proof in its interpretation of the application of the other insurance-continuous losses endorsement by establishing the intent of the parties was for the endorsement to exclude primary coverage for NIHL claims that are at issue in this case?

(Appellant's Brief, at 6-7) (unnecessary capitalization omitted).

In its first issue, Appellant argues that the trial court erred when it found that its policies provide coverage for losses like NIHL, and that therefore it has a duty to defend Seagrave. (**See id.** at 16-24).[1] It maintains that, "[w]hen correctly applied to the facts at hand, the [e]ndorsement excludes primary coverage for continuous losses and provides excess coverage, when other insurance is available, for those continuous losses that fall within the stated temporal limits." (**Id.** at 16). This issue does not merit relief.

Our standard of review of a trial court's ruling on a summary judgment motion is well-settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

---

[1] We acknowledge that Appellant maintains Wisconsin law should be applied to this dispute. (**See** Appellant's Brief, at 16 n.3). The trial court observed that the law of Pennsylvania and Wisconsin is the same on the issues before it, and it cited to both jurisdictions. (**See id.**; **see also** Trial Ct. Op., at 2 n.1-2). We decline to weigh in on this matter because it would have no practical effect on our review of the trial court's decision. **See Erie Ins. Exchange v. Claypoole**, 673 A.2d 348, 352 (Pa. Super. 1996) ("It is impermissible for courts to render purely advisory opinions.") (citations omitted).

***Good v. Frankie & Eddie's Hanover Inn, LLP***, 171 A.3d 792, 795 (Pa.

Super. 2017) (citation omitted).

Further:

Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract. If doubt or ambiguity exists it should be resolved in insured's favor.

An insurer's duty to defend is broader than its duty to indemnify. It is a distinct obligation, separate and apart from the insurer's duty to provide coverage. An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy. As long as the complaint might or might not fall within the policy's coverage, the insurance company is obliged to defend. Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.

The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy. In making this determination, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured. Indeed, the duty to defend is not limited to meritorious actions; it even extends to actions that are groundless, false, or fraudulent as long as there exists the possibility that the allegations implicate coverage.

***Am. and Foreign Ins. Co. v. Jerry's Sport Center, Inc.***, 2 A.3d 526, 540-

41 (Pa. 2010) (citations and quotation marks omitted).

In interpreting the terms of an insurance contract, we examine the contract in its entirety, giving all of the provisions their proper

effect. Our goal is to determine the intent of the parties as exhibited by the contract provisions. In furtherance of our goal, we must accord the contract provisions their accepted meanings, and we cannot distort the plain meaning of the language to find an ambiguity. Moreover, we will not find a particular provision ambiguous simply because the parties disagree on the proper construction; if possible, we will read the provision to avoid an ambiguity.

**Burton v. Republic Ins. Co.**, 845 A.2d 889, 893 (Pa. Super. 2004) (citations omitted).

Instantly, the relevant sections of the policy provide:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

a. [Appellant] will pay those sums that [Seagrave] becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

\* \* \*

b. This insurance applies to "bodily injury" . . . only if:

(1) The "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" . . . occurs during the policy period; and

(3) Prior to the policy period, [Seagrave did not know] that the "bodily injury" . . . had occurred, in whole or in part. . . .

c. "Bodily injury" . . . which occurs during the policy and was not known [by Seagrave] to have occurred . . . includes any continuation, change or resumption of that "bodily injury" . . . after the end of the policy period.

- 6 -

(Commercial Lines Policy, Section I—Coverages, Coverage A Bodily Injury and Property Damage Liability, Insuring Agreement, at 1 § 1(a)-(c)).

SECTION V—DEFINITIONS

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

13.  "Occurrence" means an accident, including continuous or reported exposure to substantially the same general harmful conditions.

(Commercial Lines Policy, Section V—Definitions, at 12 § 3, 14 § 13).

Instantly, Appellant argues that the Other Insurance—Continuous Losses endorsement to the policy should be interpreted to mean that it is only liable for excess insurance. (**See** Appellant's Brief, at 16-24). The endorsement provides, in pertinent part:

This insurance is excess over all valid and collectible primary, excess and contingent insurance that is available to any insured, whether in the same policy period or other policy periods, for "bodily injury" . . . caused by an "occurrence" that involves the continuous or repeated exposure to substantially the same general harmful conditions:

a) Beginning prior to and continuing after 9/08/2009 and ending by or before the end of the policy period[.]

* * *

When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". . . .

(Commercial Lines Policy, Endorsement, Other Insurance—Continuous Losses).

In interpreting the import of this language, the trial court found:

> The endorsement does not say "this insurance will provide coverage for only the following limited circumstances." Instead, it reads "this insurance is excess over all [other] insurance" with respect to the following limited occurrences, *i.e.*, those firefighters who claim their exposure to the sirens began prior to, and continued after September 8, 2009, but ended by or before June 1, 2011." Therefore, in some very limited circumstances not applicable here, [Appellant's] policies provide excess coverage to Seagrave. When such limited circumstances do not exist, the insurance coverage afforded by the policies is not excess; it is primary under the general insuring provisions cited [above. (**See** Insuring Agreement, **supra**, at 1 § 1(a)-(c)).]
>
> [Appellant] argues that, as a result of [the] limited excess coverage set forth in the endorsement, all other primary coverage ceased to exist, but it cannot point to an express statement disclaiming all such primary coverage. Such a disclaimer of primary coverage for repeated noise exposure commencing before or after September 8, 2009, and/or continuing beyond June 1, 2011, is not contained in the endorsement, nor anywhere else in the policies. Instead, the general coverage provisions of the policies contemplate primary coverage for any bodily injuries that occur during the policy period, even if they continue after the expiration of the policies. Furthermore, while the policies prohibit coverage for some bodily injuries that commenced before September 8, 2009, they do so only if Seagrave knew, prior to the policy period, that such bodily injury had occurred.

(Trial Ct. Op., at 5) (unnecessary capitalization omitted).

We agree with the court's reasoning. Based on independent review of the policy, particularly when read in the light most favorable to the insured, the clear and unambiguous language of the endorsement is that, in certain limited circumstances, Appellant will only provide excess coverage. However, occurrences that do **not** happen during that limited time-period are covered

by Appellant as a primary insurer. **See Am. and Foreign Ins. Co.**, **supra** at 540-41; **Burton**, **supra** at 893.

In addition, Appellant's claim that it is not required to provide coverage because Seagrave "knew" of the occurrences before signing the policy does not merit relief. (Appellant's Brief, at 20). As observed by the trial court:

> [Appellant] next argues, under the terms of the policies and the known loss doctrine, that since Seagrave apparently knew of one firefighter's claims before it entered into the policies with [Appellant], Seagrave is barred from recovering for any subsequent claims for bodily injury brought by other firefighters. However, each underlying plaintiff's hearing loss constitutes a separate "bodily injury" claim under the policies. "Bodily injury" is used in the singular throughout the insuring provisions of the policies, including the provisions regarding prior knowledge, and "bodily injury" is defined as something happening to "a person", not multiple people. Therefore, Seagrave's knowledge of one firefighter's pre-policies injury does not bar it from claiming coverage for any other firefighter's injuries, particularly those claims and injuries of which Seagrave did not learn until after the policies had terminated.

(Trial Ct. Op., at 5-6) (unnecessary capitalization omitted).

Again, we conclude that the clear and unambiguous language of the contracts supports the trial court's interpretation. **See Am. and Foreign Ins. Co.**, **supra** at 540-41; **Burton**, **supra** at 893. Although Seagrave might have been aware of one alleged occurrence at the time it signed the insurance contract, it was not aware of the others that had not yet materialized. Appellant's claim in this regard fails. Therefore, for all of these reasons, its first issue does not merit relief.

In its second issue, Appellant argues that "the trial court erred in its interpretation of the [self-insured retention (SIR)] endorsement." (Appellant's Brief, at 24) (unnecessary capitalization omitted). Specifically, it maintains that "attorneys' fees are included in the Retained Limit, and Seagrave is obligated to exhaust its SIR, on a per claim basis, before [Appellant] must contribute to Seagrave's defense costs." (*Id.*; *see also id.* at 24-30). We disagree.

In addressing Appellant's issue, we reiterate that "[i]n interpreting the terms of an insurance contract, we examine the contract in its entirety, giving all of the provisions their proper effect." *Burton*, *supra* at 893 (citation omitted).

Here, the SIR endorsement provides, in pertinent part:

1. [Appellant's] total liability for all **damages** will not exceed the limits of liability as stated in the Declarations and will apply in excess of [Seagrave's] [SIR] ("Retained Limit"). "**Retained Limit**" is the amount shown below, which [Segrave is] obligated to pay, and **only includes damages** otherwise payable under this policy.

* * *

$75,000 Per Occurrence—Products and Completed Operations

2. Expenses incurred under the SUPPLEMENTARY PAYMENTS provisions of this policy are . . . [i]ncluded in the "Retained Limit"[.]

(Commercial Lines Policy, SIR Endorsement, at 1 §§ 1, 2) (emphases added).

In reviewing the above language, the trial court observed:

- 10 -

By its clear terms, the SIR applies only to "damages" paid to claimants and "expenses" incurred by the insured. "Expenses" are defined in the supplementary payment provisions to include, *inter alia*, things like loss of earnings, as well as

> [A]ll court costs taxed against [Seagrave] in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

(Commercial Lines Policy Coverage Form, Section I—Coverages, Supplementary Payments—Coverages A and B, at 8 § 1(e)).

Attorneys' fees are instead covered under the duty to defend portion of the supplementary payments provision[], which states that "attorney's fees . . . will not be deemed to be damages for 'bodily injury' and will not reduce the limits of insurance." (**See id.** at 8 § 2). Since attorneys' fees are neither damages nor expenses, they are not the subject of the SIR endorsement, and Seagrave's SIR obligations have no bearing on [Appellant's] duty to contribute to Seagrave's defense costs.

(Trial Ct. Op., at 6-7) (unnecessary capitalization and footnotes omitted; record citations added).

We agree with the sound reasoning and interpretation of the trial court. Therefore, based on the plain and unambiguous language of the insurance contract, we conclude that the trial court properly found that attorney fees were not part of the retained limit of the policy. **See Am. and Foreign Ins. Co.**, **supra**, at 540-41; **Burton**, **supra** at 893. Appellant's second issue lacks merit.

In its third claim, Appellant maintains that the trial court erred in limiting discovery in this matter to only the relevant insurance policies before deciding

the motions for summary judgment.[2] (***See*** Appellant's Brief, at 30-35). This issue lacks merit.

"Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary." ***Rhodes v. USAA Cas. Ins. Co.***, 21 A.3d 1253, 1258 (Pa. Super. 2011) (citation omitted). Pertinent to Appellant's issue, we observe:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery **relevant to the motion**, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2 (emphasis added).

We reiterate that "[i]nsurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the

---

[2] After a January 7, 2016 discovery hearing, the trial court issued an order that, "in an effort to streamline and expedite this case," the defendants were to submit, *inter alia*, "all extant insurance policies under which there is some dispute as to coverage for defense costs[,]" with all other discovery stayed. (Order, 1/07/16, at 1). At a September 22, 2016 status conference, the trial court denied Appellant's request that it lift the stay. (***See*** N.T. Conference, 9/22/16, at 30; Order, 9/27/16, at 1).

time they formed the contract governs its interpretation. **Such intent is to be inferred from the written provisions of the contract**." *Am. and Foreign Ins. Co.*, *supra* at 540 (citation omitted; emphasis added). "**When . . . an ambiguity exists**, parol evidence is admissible to explain or clarify or resolve the ambiguity[.]" *Ins. Adj. Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 481 (Pa. 2006) (citations omitted; emphasis added).

Instantly, as discussed in Appellant's first two issues, the contract language is clear and unambiguous. (*See supra* at 8-10). Therefore, parol evidence was inadmissible in deciding the motions for summary judgment. *See Ins Adj. Bureau, Inc.*, *supra* at 481; *Burton*, *supra* at 893. Hence, because the court was limited to the four corners of the unambiguous contract, it properly decided the motions for summary judgment after denying Appellant's request to produce further discovery. *See Rhodes*, *supra* at 1258; *see also Pappas v. UNUM Life Ins. Co. of America*, 856 A.2d 183, 186 (Pa. Super. 2004) ("Summary judgment may be entered prior to the completion of discovery in matters where additional discovery would not aid in the establishment of any material fact.") (citation omitted). Appellant's third claim lacks merit.

Accordingly, for all of the foregoing reasons, the trial court properly denied Appellant's motion for summary judgment and granted the motion for summary judgment of Appellees. *See Good*, *supra*, at 795.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/18