J-A14039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KATHERINE M. MOORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK L. MOORE | : | No. 974 WDA 2020 |

Appeal from the Order Entered August 17, 2020
In the Court of Common Pleas of Erie County Civil Division at No(s):  No.
12434-17

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                 **FILED: AUGUST 27, 2021**

Katherine M. Moore ("Katherine") appeals from the August 17, 2020,

Order granting the Motion for Summary Judgment filed by Mark L. Moore

("Mark") and denying Katherine's Motion for Summary Judgment.  After

careful review, we affirm.

The trial court provided the following history underlying this appeal:

The controversy in this case stems from a $200,000 KeyBank
Small Business Administration (SBA) loan [(the "SBA loan")]
made to J.J. Moore Sales, Inc.  [("J.J. Moore")][,] in May of 2002.
[Mark] was the sole owner and proprietor of J.J. Moore at the time
of the loan, and both [Katherine] and [Mark], who were married
at the time, individually guaranteed the loan.  They executed a
suretyship agreement titled "Unconditional Guarantee" on May 15,
2002 [(the "Suretyship Agreement")], which states[,] in relevant
part:

> Guarantor  unconditionally  guarantees  payment  to
> Lender of all amounts owing under the Note.  This
> Guarantee is in effect until the Note is paid in full.
> Guarantor must pay all amounts due under the Note
> when Lender issues written demand upon Guarantor.

> Lender is not required to seek payment from any other source before demanding payment from Guarantor.

Under the Suretyship Agreement, both [Katherine] and [Mark] also waived their rights to require demand be made upon the borrower, J.J. Moore, and to notice of default under the Note.

Prior to the [SBA] loan's scheduled date of maturity[,] on May 15, 2009, both J.J. Moore and [Mark] filed for bankruptcy. J.J. Moore filed for Chapter 11 bankruptcy on May 11, 2006[,] and had its Chapter 11 Plan and Disclosure Statement approved on May 16, 2007. [Mark] filed for Chapter 7 bankruptcy on December 7, 2008[,] and was discharged by [O]rder of court, dated April 7, 2009.

Meanwhile, on February 15, 2008, [Katherine] filed for divorce in the Erie County Court of Common Pleas. [Katherine] and [Mark] executed a Separation and Property Agreement [(the "Separation Agreement")] on May 1, 2012[,] whereby the marital assets and liabilities were divided between [Katherine] and [Mark]. On June 12, 2012, the [c]ourt adopted the terms of [the Separation Agreement] and issued a [D]ivorce [D]ecree. One of the paragraphs in the Separation Agreement, clause 11, is entitled "Future Title, Ownership, and Liability." The first paragraph of this clause divided the claims and rights of both parties to the property granted them under the [Separation Agreement], giving each party full ownership of whatever property either was granted. The second paragraph of clause 11 [(the "Indemnification Clause")] … reads:

> The Husband and the Wife represent and warrant to each other that they have not incurred debts or made any contracts for which the other or his or her estate may be liable and will not hereafter incur any such debts or make any such contracts. Each party agrees to indemnify the other from any debts or contracts that may exist or come into existence in violation of this clause.

[Separation Agreement, 5/1/12, at 5.]

In January of 2014, the SBA sent [Katherine] a [N]otice demanding she satisfy the balance remaining on the SBA loan. [Katherine] disputed her obligation to [the SBA] loan and hired

counsel to seek her release from any obligation thereunder. [Katherine] argued several claims before the SBA, including [that] the SBA claim was time-barred; she detrimentally relied on the SBA's inaction to that point; and the SBA failed to join [Mark] as an indispensable party. The SBA, by administrative [O]rder, rejected [Katherine's] claims in June of 2015. Since April of 2016, the Department of the Treasury has been garnishing [Katherine's] wages to recover the balance of the SBA loan. [Katherine] filed suit against [Mark] on August 30, 2017.

In the instant case, [Katherine] claims [Mark] has breached the terms of the [Indemnification Clause] by not agreeing to indemnify her SBA loan obligation. [Katherine] argues [that] since [Mark] was required under the Separation Agreement to notify her of any obligations or debts he incurred for which she would be held liable, [Mark] was obligated to inform her of and indemnify her against the SBA loan. She asserts [that Mark], acting in his capacity as the sole owner and proprietor of J.J. Moore, incurred a debt when J.J. Moore defaulted on the SBA loan, which [Katherine] is now being held liable for. [Katherine] also argues [that Mark] was not discharged of this debt in bankruptcy proceedings. [Katherine] alleges in her Complaint that she did not have any recollection of signing the Suretyship Agreement, and that if she did, it was only at the "request and insistence" of [Mark]. In [Katherine's] view, however, and regardless of the Suretyship Agreement, this debt was incurred by the actions of [Mark], and [Mark] is liable under the Separation Agreement to indemnify [Katherine].

[Mark] claims, on the other hand, he had no duty under the Separation Agreement to notify [Katherine] of her obligation to the SBA loan and he has no duty to indemnify her against her obligation, either. [Mark] argues J.J. Moore, a corporate entity, and not [Mark] individually, defaulted on the SBA loan, and [Katherine] incurred her obligation through the Suretyship Agreement she signed in 2002. [Mark] also argues he was discharged of this debt in bankruptcy court and, therefore, did not have any debt to notify [Katherine] of when he signed the Separation Agreement. [Mark] argues it is absurd for [Katherine] to require him to notify her and indemnify her against her own debt obligation.

Both parties filed respective Motions for Summary Judgment. The parties are not disputing the formation or validity

of the Suretyship Agreement, nor is either party disputing whether both [Katherine] and [Mark] signed the Suretyship Agreement, as indicated during the hearing on the record. The parties are not disputing the formation or validity of the Separation Agreement, nor that both parties have signed and are bound by the Separation Agreement. And, as explained above, whether [Mark] or J.J. Moore were discharged of liability for the SBA loan during the relevant bankruptcy proceedings does not affect the outcome in this case, and is, therefore, not material to this case. There is one substantive issue before this [t]rial [c]ourt: whether [Mark] is liable under the Separation Agreement to indemnify [Katherine] against her obligation to secure the SBA loan. In other words, whether the [Indemnification Clause] relieves [Katherine] of her obligation under the Suretyship Agreement and places it on [Mark].

Trial Court Opinion, 8/17/20, at 2-4 (citation and footnotes omitted).

The trial court held a hearing on the parties' Motions for Summary Judgment on August 3, 2020. Thereafter, the trial court entered an Order denying Katherine's Motion for Summary Judgment and granting Mark's Motion for Summary Judgment. Katherine filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Katherine presents the following question for our review:

Did the [t]rial [c]ourt err in denying [Katherine's] Motion for Summary Judgment and granting [Mark's] Motion for Summary Judgment where: (i) the parties' [Separation Agreement] requires [Mark] to indemnify [Katherine] for any debts [Mark] incurred or any contracts [Mark] made for which [Katherine] may be liable, (ii) during their marriage, [Mark] made a contract in the form of a SBA [l]oan, (iii) [Mark] solely and unilaterally incurred a debt to the benefit of his business of which he was the President and sole shareholder, (iv) [Katherine] was held liable for the SBA [l]oan, and (v) [Mark] failed to indemnify [Katherine] for the SBA [l]oan?

J-A14039-21

Appellant's Brief at 2-3.[1]

Our standard of review of a trial court's grant or denial of a motion for summary judgment is well settled:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Good v. Frankie & Eddie's Hanover Inn, LLP,* 171 A.3d 792, 795 (Pa. Super. 2017) (citing *Hall v. CNX Gas Co., LLC*, 137 A.3d 597, 601 (Pa. Super. 2016) (citation omitted)).

In support of her appeal, Katherine argues that the trial court erred because the plain language of the Indemnification Clause was triggered when Mark incurred a debt for which Katherine may be liable. Brief for Appellant at 13. Specifically, Katherine argues that "[Mark] agreed to indemnify [Katherine] for [] any debts 'incurred' or [] any 'contracts' that [Mark] 'made' from either of which [Katherine] 'or her estate may be liable.'" *Id.* at 14. Katherine argues that the undisputed facts show that Mark, on behalf of J.J. Moore, made a contract, and that the Indemnification Clause does not place

_____

[1] In her brief, Katherine also argues that she is entitled to reimbursement for legal fees accrued in conjunction with defending the collection activity as well as the instant breach of contract litigation. Brief for Appellant at 21-23.

- 5 -

any qualifiers on the phrase "made a contract." *Id.* at 15. She asserts that the Indemnification Clause does not limit the scope of debts nor the means by which Katherine may be liable. *Id.* She further avers that, according to Pennsylvania's rules of contract interpretation, this Court is required to "ascertain and give effect to the intent of the contacting parties." *Id.*

Katherine also argues that Mark incurred the debt – the SBA loan – in his capacity as the President of J.J. Moore. *Id.* at 16. She posits that even though she signed the Suretyship Agreement for the debt, the debt would not have come due if J.J. Moore had not defaulted on the loan. *Id.* She further claims that the Indemnification Clause contains no limit on the mechanism of liability, and the term "may be liable" applies regardless of whether the liability was caused by Mark's actions alone or only incurred during the marriage. *Id.* at 17. Katherine also points to the fact that her interpretation of the Indemnification Clause is consistent with the remainder of the Separation Agreement, because the Indemnification Clause is listed after the provisions that distribute assets and liabilities. *Id.* at 17-18.

Thus, Katherine contends that she was entitled to summary judgment on her breach of contract claim as a matter of law, because Mark had a duty to indemnify her for the SBA loan; he failed to do so; and that breach caused Katherine's damages. *Id.* at 19.

In his brief, Mark argues that Katherine's claim must fail because she entered into the Suretyship Agreement of her own undertaking and that the

Suretyship Agreement formed the sole basis for her liability. Brief for Appellee at 6. Mark further claims that the purpose of the Indemnification Clause "was not to allocate responsibility for known obligations because, presumably, the parties would have done that explicitly and directly." *Id.* He posits that "the parties distributed the known assets and obligations of the marital estate, and wanted to ensure, through [the Indemnification Clause], that the other spouse had not and would not incur any additional debt on their behalf." *Id.*

Mark asserts that, ultimately, Katherine's claim must fail because he did not incur any debt or contracts on behalf of Katherine. *Id.* He avers that the Suretyship Agreement was an individual obligation of Katherine's and the sole basis for liability for the SBA Loan. *Id.* Pursuant to that Agreement, the SBA could seek repayment of the SBA loan from Katherine, individually, without seeking payment from either Mark or J.J. Moore. *Id.* 6-7.

Alternatively, Mark argues that even if Katherine's general interpretation of the Indemnification Clause were correct, it is undisputed that Mark did not incur the debt, but rather, it was a non-marital debt of J.J. Moore. *Id.* at 8. Mark further asserts that the fact that he was the sole shareholder and President of J.J. Moore is insufficient "to consider the SBA [l]oan as a personal obligation or undertaking of Mark." *Id.* (citing *Marano v. Granata*, 24 A.2d 148, 149 (Pa. Super. 1942), as standing for the proposition that an agent acting for a disclosed principal is not a party to the contract.). Moreover, Mark points to the fact that the Note identifies the borrower as J.J. Moore and his

signature line stated, "Mark L. Moore, President," and he signed the Note followed by the word "Pres." *Id.* at 9. This is in contrast to the signature line on the Suretyship Agreement which reads, "Mark L. Moore, Individual." *Id.* Thus, in the absence of fraud or wrongdoing, Mark contends that the law does not support Katherine's argument that the obligation of the principal should be attributed to the agent. *Id.* Finally, Mark argues that Katherine has failed show that the corporate veil should be pierced, and Mark held liable for the debt of J.J. Moore. *Id.* at 10.

In its Opinion, the trial court aptly addressed Katherine's issue on appeal, set forth the relevant law, and found no merit to that issue. We adopt the sound analysis and Opinion of the trial court as if set forth fully herein. *See* Trial Court 1925(a) Opinion, 11/16/20, at 4-12.

Further, the contract between Katherine and the SBA is one for a suretyship. *See McIntyre Square Assocs. v. Evans*, 827 A.2d 446, 452 n.7 (Pa. Super. 2003) (discussing suretyship and guarantee agreements, and noting "[w]hile both guaranty and suretyship agreements are agreements to be liable for the debt of another, the principal difference is that the creditor may look to the surety for immediate payment upon the debtor's default, without first attempting to collect the debt from the debtor, whereas the creditor must first seek payment from the debtor before going after a guarantor."); *see also* 8 P.S. § 1 (providing that all agreements to answer for the debt of another will be considered a suretyship unless the agreement

specifically states otherwise). Thus, pursuant to the terms of the Suretyship Agreement, Katherine agreed to repay the SBA loan upon the default of J.J. Moore, and not upon any action on the part of Mark.

In the instant case, Katherine has failed to show that Mark breached the duties imposed upon him by the Indemnification Clause and consequently, her claim must fail. *See McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. 2013). (To succeed on a breach of contract claim, a plaintiff must prove the following elements: 1) existence of a contract, including essential terms, 2) a breach of the duty imposed by the contract, and 3) resulting damages.) As the trial court found, Katherine's obligation to repay the SBA loan is the result of the Suretyship Agreement, which she individually signed. *See* Trial Court 1925(a) Opinion, 11/16/20, at 12. The trial court's findings are supported in the record, and its legal conclusions are sound. Finding no abuse of discretion or error of law on the part of the trial court in granting summary judgment in favor of Mark and denying Katherine's Motion for Summary Judgment, we affirm the trial court's Order.[2]

Order affirmed.

---

[2] Given our disposition of Katherine's first issue, we conclude she is not entitled to attorneys' fees.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/27/2021

KATHERINE M. MOORE,  : IN THE COURT OF COMMON
             Appellant  : PLEAS OF ERIE COUNTY,
              : PENNSYLVANIA
              :

vs.  :
              :
              : Civil Court
              :

MARK L. MOORE,  : Trial Docket No. 12434 – 2017
             Appellee  : 974 WDA 2020

Appearances:    Scott M. Hare, Esq. appeared on behalf of Appellant
                 Steven E. George, Esq. appeared on behalf of Appellee

## 1925(a) OPINION

Domitrovich, J., November 16, 2020

This case concerns the signing of an Unconditional Guarantee Suretyship

Agreement by Appellant Katherine M. Moore [hereinafter Appellant], in her

individual capacity, for a Small Business Administration loan [hereinafter SBA

loan] to J.J. Moore Sales, Inc. [hereinafter J.J. Moore]. In 2002, both Appellant and

Appellee Mark L. Moore [hereinafter Appellee] individually signed separate

Unconditional Guarantee Suretyship Agreements to guarantee the SBA loan to J.J.

Moore at the time of the loan's disbursement by the SBA. [1] In 2008, Appellant and

Appellee initiated divorce proceedings at Docket No. 10800 – 2008, culminating in

---

[1] Appellee indicates he was discharged from his obligation to the SBA in Chapter 7 bankruptcy on April 7, 2009. Whether Appellee or J.J. Moore was discharged from any obligation for the SBA loan was not a determinative issue before this Trial Court. Rather, the controlling issue before this Trial Court was whether Appellant's obligation to the SBA, as a result of the Unconditional Guarantee Suretyship Agreement, was subject to the Separation Agreement's indemnification provision.

A TRUE COPY ATTEST
PROTHONOTARY

Page 1 of 13

Rule 236 notice
Provided on: 11/16/20

2012 with the signing of a Marital Separation and Property Agreement [hereinafter Separation Agreement] and Divorce Decree incorporating said Separation Agreement. [2] This Separation Agreement does not evidence specifically that Appellant's SBA loan debt was contemplated during the formation of the Separation Agreement. The parties did not specifically indicate the Separation Agreement was intended to abrogate Appellant's direct and immediate obligation as surety for the SBA loan. This SBA loan was made to J.J. Moore, not Appellee, as Appellee was also a surety for the SBA loan to J.J. Moore; therefore, Appellee's actions did not result in Appellant's obligation under the loan. More importantly, Appellant's obligation to answer to the SBA for the loan to J.J. Moore is the direct result of her own actions when she signed the Unconditional Guarantee Suretyship Agreement, and not the actions of either J.J. Moore or Appellee. The SBA is seeking repayment from Appellant through the Unconditional Guarantee Suretyship Agreement individually signed by Appellant. Therefore, this Trial Court granted Appellee's Motion for Summary Judgment and denied Appellant's Motion for Summary Judgment as to Appellee's obligation to indemnify Appellant for the instant SBA loan.

In Appellant's 1925(b) Concise Statement, Appellant's counsel alleges

---

[2] In 2017, Appellant filed the instant action for enforcement under the Separation Agreement at a new docket number – Civil Action Docket Number 12434 of 2017 – which is not under the parties' divorce Docket Number of 10800 of 2008, where the Separation Agreement was filed and docketed with all other relevant divorce information.

this Trial Court erred as to four conclusions of law which this Trial Court has combined into one issue: whether Appellant's executing an individual and separate Unconditional Guarantee Surety Agreement with the SBA to guarantee the SBA loan can be enforced under the indemnification provision of Appellant and Appellee's Separation Agreement which does not indicate any intent of the parties to have Appellee indemnify Appellant for debts and obligations she separately incurred herself?

The procedural history of this case is as follows: In 2012, at the Divorce Docket Number 10800 – 2008, Appellant and Appellee signed the instant Separation Agreement and were issued a Divorce Decree. On August 30, 2017, Appellant filed the instant Complaint at Civil Docket Number 12434 – 2017 seeking to bring Appellant's Suretyship Agreement under the Separation Agreement. [3] Appellant's Complaint alleged one count of breach of contract regarding the 2012 Separation Agreement. Appellant also claimed entitlement to attorney's fees for responding to the claims of the SBA/Department of the Treasury against Appellant. Appellee filed Preliminary Objections to Appellant's Complaint on September 21, 2017, which were overruled by this Trial Court on April 17, 2018. Appellee filed an Answer,

---

[3] Appellant filed the instant action after receiving a June 2015 Administrative Order from the SBA holding Appellant liable for the SBA loan under the Unconditional Guarantee Suretyship Agreement. Despite Appellant claiming in the initial Complaint she did not remember executing the instant Unconditional Guarantee Suretyship Agreement, Appellant argued in front of the SBA that she was an innocent spouse and that the SBA failed to join Appellee as an indispensable party. The SBA rejected Appellant's claims.

New Matter, and Counterclaim on May 10, 2018, to which Appellant filed a Reply to New Matter and Answer to Counterclaim on December 24, 2018. A lengthy discovery process ensued. On June 9, 2020, Appellee filed his Motion for Summary Judgment, and on July 1, 2020, Appellant filed her Motion for Summary Judgment. This Trial Court heard argument regarding both Motions for Summary Judgment on August 3, 2020, wherein both parties were represented by counsel. On August 17, 2020, this Trial Court issued an Opinion and Order stating reasons and relevant law for denying Appellant's Motion for Summary Judgment and granting Appellee's Motion for Summary Judgment.

On September 15, 2020, Appellant timely filed a Notice of Appeal with the Prothonotary of the Erie County Court of Common Pleas as well as the Pennsylvania Superior Court. Also on September 15, 2020, this Trial Court issued a 1925(b) Order to Appellant directing Appellant to file a Concise Statement of Matters Complained of on Appeal with this Trial Court. Appellant timely filed her 1925(b) Concise Statement on October 6, 2020.

Under Pennsylvania law, a surety agreement is a contract and the language of the surety agreement determines the surety's rights and liabilities. *Beckwith Machinery Co. v. National Union Fire Ins. Co. of Pittsburgh*, 809 A.2d 403, 406 (Pa. Super. 2005). "A contract of suretyship is between the principal debtor and the surety." *Reliance Ins. Co. v. Penn Paving, Inc.*, 734 A.2d 833, 836 (Pa. 1999). "A

suretyship is a direct and original undertaking, under which the obligor is primarily and jointly liable with the principal." *Deeter v. Dull Corp., Inc.*, 617 A.2d 336, 341 (Pa. Super. 1992) (citing *Wurlitzer Co. v. Oliver*, 334 F. Supp. 1009 (W.D. Pa. 1971)). "Customarily, a suretyship arrangement arises when a creditor refuses to extend credit to a debtor unless a third party (the surety) agrees to provide additional security for repayment of the debt by undertaking the debtor's obligation to the creditor if the debtor fails to perform." *Continental Bank v. Axler*, 510 A.2d 726, 729 (Pa. Super. 1986). "A surety is one who undertakes to pay money or perform other acts in the event that his principal fails therein, and the surety is directly and immediately liable for the debt." *Wurlitzer Co.*, 334 F. Supp. at 1013 (citing *In re Brock's Assigned Estate*, 166 A. 778 (Pa. 1933)).

In this case, both Appellant and Appellee signed separate Unconditional Guarantee Suretyship Agreements in their individual capacities. These Unconditional Guarantee Suretyship Agreements provide that Appellant and Appellee are both guarantors and that the borrower is J.J. Moore. Each Unconditional Guarantee Suretyship Agreement provides in relevant part: "Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. ***Guarantor must pay all amounts due under the Note when Lender issues written demand upon Guarantor. Lender is not required to seek payment from any other***

*source before demanding payment from Guarantor.*" [4] The Unconditional Guarantee Suretyship Agreement requires guarantor waive any right to require demand be made upon the borrower, J.J. Moore. The Unconditional Guarantee Suretyship Agreement requires guarantor waive any right to notice of default and notice of any change in the financial condition or business operations of borrower or any guarantor. The Unconditional Guarantee Suretyship Agreement requires guarantor waive any defense to payment due to any change in the financial condition of borrower or any guarantor. The Unconditional Guarantee Suretyship Agreement requires guarantor waive any defense Borrower has avoided liability on the note. Finally, the Unconditional Guarantee Suretyship Agreement states all guarantors are jointly and severally liable for repayment of the note.

The Unconditional Guarantee Suretyship Agreement clearly states the borrower/principal debtor is J.J. Moore, and Appellant and Appellee are sureties for J.J. Moore's SBA loan. Since under Pennsylvania law a principal debtor may not act as her or his own surety, J.J. Moore and Appellee are not considered the same entity any more than J.J. Moore and Appellant are considered the same entity. *See Hamilton v. Harida*, 421 A.2d 396, 399 (Pa. Super. 1980) (citing *Brock's Assigned*

---

[4] Under Pennsylvania law, a contract that guarantees the debt of another is a suretyship agreement when the creditor is entitled to seek payment directly from the guarantor/surety without being required to first seek payment from the principal debtor. *See McIntyre Square Assoc. v. Evans*, 827 A.2d 446, 451 n. 7 (Pa. Super. 2003) (citing *Reuter v. Citizens & North Bank*, 599 A.2d 673, 678 n. 3 (Pa. 1991)). Since KeyBank was entitled to seek payment directly from both Appellant and Appellee under the instant agreements, these contracts were suretyship contracts.

*Estate (No. 1)*, 166 A. 778 (Pa. 1933)). J.J. Moore, as a corporation, is its own entity. Therefore, Appellant's argument that the debt she incurred in the instant case was incurred solely and entirely by Appellee is without merit. Appellant's argument rests on the idea that since Appellee was President and sole shareholder of J.J. Moore, Appellee is solely and entirely liable for J.J. Moore's inability to repay the loan. However, as Appellee cannot be both principal debtor and surety for the SBA loan, to the extent any person or entity other than Appellant is liable for Appellant's obligation to repay the loan, that person or entity is J.J. Moore, not Appellee.

However, regardless of J.J. Moore's inability to repay the loan and the effect J.J. Moore's inability to repay had on the SBA's choice to seek repayment from Appellant, Appellant's obligations to the SBA are determined by the Unconditional Guarantee Suretyship Agreement she executed, not by any actions of Appellee or J.J. Moore. Under Pennsylvania law, the Unconditional Guarantee Suretyship Agreement determines Appellant's rights and obligations as surety for the SBA loan granted to the borrower, J.J. Moore. Also under Pennsylvania law, a surety incurs a direct and immediate liability for the debt. While the above list of obligations under the Unconditional Guarantee Suretyship Agreement does not represent an exhaustive list of the obligations contained therein, these obligations clearly indicate the instant Unconditional Guarantee Suretyship Agreement led to Appellant's direct and immediate obligation to the SBA for its loan to J.J. Moore. The Suretyship

Agreement states clearly Appellant herself undertook as an individual guarantor to repay the full amount of the note, and Appellant remains liable until the loan is repaid in full. Appellant agreed to be unconditionally bound to the instant Unconditional Guarantee Suretyship Agreement. Appellant agreed to be jointly and severally liable for repayment of the note. Appellant waived notice and defenses to repayment regarding the change in financial circumstances or conditions of J.J. Moore or Appellee.

Despite Appellant incurring a direct and immediate obligation for the SBA loan pursuant to the Unconditional Guarantee Suretyship Agreement, Appellant argues she is entitled to indemnification for this obligation from Appellee under the Separation Agreement. In order to determine whether such a direct and immediate obligation is included within the Separation Agreement, the Separation Agreement must be examined closely. Under Pennsylvania law, marital settlement agreements are subject to the law governing contracts and must be interpreted as written. *In re Estate of Easterday*, 209 A.3d 331, 337 (Pa. 2019). "A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005) (quoting *Chen v. Chen*, 840 A.2d 355, 360 (Pa. Super. 2003)). "When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties, the court looks to what they have clearly

expressed, for the law does not assume that the language was chosen carelessly." *Melton v. Melton*, 831 A.2d 646, 653-54 (Pa. Super. 2003). "In construing agreements involving clear and unambiguous terms, a Court need only examine the writing itself to give effect to the parties' understanding, meaning the intent of the parties is generally the writing itself. *Rosiecki v. Rosiecki*, 231 A.3d 928, 933 (Pa. Super. 2020) (quoting *Lang v. Meske*, 850 A.2d 737, 739-40 (Pa. Super. 2004); *Stamerro*, 889 A.2d at 1258).

In the instant case, Appellant argues clause 11 of the Separation Agreement, titled *Future Title, Ownership, and Liability*, supports her argument that Appellee is allegedly bound to indemnify her under the Separation Agreement. The first paragraph of clause 11 states: "Each of the parties shall hereafter own, have and enjoy, all items of real and personal property now or hereafter belonging to him or her and now or hereafter in his or her possession, with full power to him or her to dispose of the same as fully and effectively, in all respects and for all purposes, as though her or she were unmarried." The second paragraph, which Appellant relies upon, states: "The Husband and Wife represent and warrant to each other that they have not incurred debts or made any contracts for which the other or his or her estate may be liable and will not hereafter incur any such debts or make any such contracts. Each party agrees to indemnify the other from any debts or contracts that may exist or come into existence in violation of this clause." *See* Complaint, p. 16.

This Trial Court finds and concludes the language of clause 11 in the Separation Agreement is clear and unambiguous. This Trial Court is, therefore, bound to interpret this contract as written. To determine whether Appellant or Appellee is bound to indemnify the other for the Suretyship Agreements which both Appellant and Appellee signed in an individual capacity, this Trial Court must examine the intent of the parties as determined by the language of the Separation Agreement. Vital to this determination is the clear and unambiguous language that "Husband and Wife represent and warrant to each other that they have not *incurred debts or made any contracts for which the other or his or her estate may be liable…*" *Id.* By this clear and unambiguous language, the intent of both Appellant and Appellee was to indemnify each other only for debts and obligations incurred by either person that the other, or their estate, is held liable. Appellant or Appellee must have incurred a debt or obligation for which the other has become liable. Therefore, if either Appellant or Appellee individually incurred a debt obligation for which the other party would be held liable, said person would indemnify the other for that obligation. However, if Appellant or Appellee incurred a debt obligation for which he or she personally is being held liable, Appellant or Appellee would not be entitled to indemnification from the other party.

The interpretation of this contract is further strengthened by the third "Whereas" clause of the Separation Agreement: "…[T]he parties are desirous of

settling fully and finally their respective financial and property rights and obligations *as between each other* including, without limitation or specification: the settling of all matters between them relating to the ownership and equitable distribution of real and personal property...and in general, the settling of any and all claims and possible claims by one against the other or against their respective estates." *Id.* at p. 12-13. Clearly, the property and financial rights in question are those as between Appellant and Appellee, and not those property or financial rights either Appellant or Appellee had incurred individually.

Moreover, both the first paragraph of clause 11 and the third "Whereas" clause refer to real and personal property as well as financial rights and interests in the context of marital property and interests being divided by the Separation Agreement. All marital debts and obligations incurred between Appellant and Appellee are included, but not debts or obligations incurred individually by either Appellant or Appellee for which said person would now be held liable. Pennsylvania law is clear that a marital debt is one that accrues to both husband and wife jointly before the separation. *See* Standard Pennsylvania Practice 2d § 126:559; *Litmans v. Litmans*, 673 A.2d 382 (Pa. Super. 1996). While in the instant case both Appellant and Appellee were married at the time they executed separate suretyship agreements, Appellant solely and individually executed a separate Unconditional Guarantee

Suretyship Agreement. The debt accrued to Appellant individually pursuant to the Unconditional Guarantee Suretyship Agreement she signed.

In the instant case, therefore, Appellant herself incurred the obligation to repay the SBA loan and the instant debt by signing the Unconditional Guarantee Suretyship Agreement in 2002. Otherwise, the SBA would have no mechanism to seek repayment from Appellant for this obligation she incurred separately and not due to Appellee's actions. According to the Separation Agreement, Appellant is only entitled to indemnification from Appellee for debts, contracts, or obligations Appellee incurred for which either Appellant or Appellant's estate is now liable. The Separation Agreement provides for the right of indemnification if either Appellant or Appellee incurred a debt obligation that the other person would be held liable for; however, this is not the case here. Since Appellant's obligation to the SBA stems from Appellant having individually executed the 2002 Suretyship Agreement with the SBA, Appellant's own contract has resulted in her obligation to repay the debt to the SBA. The SBA is entitled through Appellant's signing the Unconditional Guarantee Suretyship Agreement to seek full repayment directly from Appellant without having to seek repayment from either J.J. Moore or Appellee. For these reasons, Appellant is not entitled to indemnity from Appellee for her personal obligation incurred to the SBA.

For all of the above reasons, this Trial Court properly found and concluded the Separation Agreement did not provide for indemnification of debts or contracts incurred by either Appellant or Appellee in an individual capacity. Neither Appellant nor Appellee is entitled to have individual debts or obligations separately incurred indemnified by the other. By individually executing this Unconditional Guarantee Suretyship Agreement in 2002 with the SBA, Appellant herself incurred this debt obligation to the SBA.

This Trial Court honorably requests the Pennsylvania Superior Court affirm this Trial Court's August 17, 2020 Order granting Appellee's Motion for Summary Judgment and denying Appellant's Motion for Summary Judgment.

BY THE COURT:

Stephanie Domitrovich, Judge

cc:    Scott M. Hare, Esq., 1806 Frick Bldg., 437 Grant St., Pittsburgh, PA 15219
       Steven E. George, Esq., 300 State St., Suite 300, Erie, PA 16507